William FROGGE, Plaintiff/Appellee,

v.

James A. DAVENPORT, Commissioner,
Tennessee Department of Employment
Security, Defendant/Appellee,

and

Memphis Housing Authority,
Defendant/Appellant.

Court of Appeals of Tennessee,
Western Section, at Jackson.

April 20, 1995.

Application for Permission to Appeal
Denied by Supreme Court
Aug. 28, 1995.

Gregory L. Perry, Memphis, for Memphis Housing Authority, Defendant/Appellant.

Charles W. Burson, Attorney General and Reporter Michelle L. Lehmann, Assistant Attorney General, for James A. Davenport, Commissioner, Tennessee Department of Employment Security, Defendant/Appellee.

Warner Hodges, III, Germantown, for William Frogge, Plaintiff/Appellee.

FARMER, Judge.

The Memphis Housing Authority (MHA) and the Tennessee Department of Employment Security (TDES) appeal from the chancery court's reversal of TDES's denial of unemployment benefits to the appellee, William Frogge.[1]

On April 23, 1992, Mr. Frogge filed a claim for unemployment benefits with TDES, stat-

---

1. The MHA filed a notice of appeal following the chancellor's final order. The TDES then filed its brief as appellee although the judgment below was entered against them. Because Mr. Frogge did not raise a question regarding the manner in which appeal was taken from the court below, we will not address this issue and will consider the TDES as an appellant in this cause.

ing that he quit his job because "I was informed that I was to be terminated effective some time in April 92. I would have lost my sick time, bonus time and overtime if I had stayed and been terminated." On May 1, 1992, the TDES denied Mr. Frogge's claim.

Following a June 2, 1992 hearing before an appeals referee, the Appeals Tribunal made the following findings of fact:

Claimant's most recent employment prior to filing this claim was with Memphis Housing Authority, as a security officer from January 24, 1990 until March 20, 1992. There were rumors and statements from co-workers and the news media that [claimant] was being recommended for discharge because of improper past hiring practices. Claimant's name was reported to be on this list. Claimant had heard from others who were not his supervisors that if the employees were discharged they would lose employee benefits such as payment for sick leave and overtime. There was no official notice to claimant at the time that he would be discharged or that his name was on the list being considered for discharge. Claimant's supervisor, with whom he discussed the rumors, recommended to claimant that claimant not resign. Claimant and one other employee decided to resign. Later, after meetings and discussions between auditors and higher authority, some of the persons who were thought to be on the list with claimant were terminated. His decision was reconsidered and the employees who were not at fault did not lose their employee benefits and were eligible to reapply for work.

Based on these findings, the Appeals Tribunal made the following conclusion:

CONCLUSIONS OF LAW: The Appeals Tribunal is of the opinion that claimant voluntarily left his most recent employment on March 20, 1992 and the evidence in the record is insufficient to establish that there was good cause in connection with claimant's work at that time, within the meaning of T.C.A. § 50–7–303(a)(1) for claimant to leave his employment. The Agency decision is affirmed.

The Board of Review of the TDES adopted these findings of fact and found no error in the Appeals Tribunal's denial of Frogge's claim. The Board of Review subsequently denied Frogge's petition for a rehearing as untimely filed.

Seeking review of the TDES's decision, Mr. Frogge filed a petition for certiorari in the Shelby County Chancery Court. Following a hearing, the chancellor entered an order on January 3, 1994, reversing the TDES's denial of unemployment compensation benefits. The chancellor found that Mr. Frogge had quit for good cause where he had been "unofficially advised by his supervisor that the two of them would be terminated from Memphis Housing Authority due to no fault of their own, but only because they were improperly hired by Memphis Housing Authority, pursuant to an audit by the Department of Housing and Urban Development." The court went on to state:

The question in this Court's mind, was he (the petitioner) acting as a reasonable and prudent man in quitting is found in the affirmative because the question presented to the Petitioner was a question of "when" he would be fired for being improperly hired and not "if" he would be fired. The Court further finds that the Petitioner had good cause for voluntarily quitting his job in that he was given virtually no choice if he were to preserve his good employment record and his fringe benefits. The court finds from the record that all evidence at the time of the resignation was that he would lose his fringe benefits if he did not resign, but rather awaited firing for being improperly hired, although the record reflects that other employees fired for being improperly hired did not resign and received their fringe benefits. The court further finds that the Petitioner acted as a reasonable and prudent man to resign when he did in order to preserve his good employment record and fringe benefits since all the evidence from the record indicates he would have eventually been fired.

From all of the above reasoning, the court therefore concludes that the decision of the Board of Review and all authorities below must be reversed because of prejudice to the rights of the Petitioner due to the fact that the findings were unsupported by evidence which is both substantial and material in light of the entire record.

The appellants allege that the chancery court erred first in the standard of review used in reviewing the TDES's decision, and second, in finding that Mr. Frogge had quit for good cause.[2]

■ Judicial review of the TDES's decision is controlled by T.C.A. § 50–7–304(i) (Supp.1994), which provides in relevant part,

(2) The chancellor may affirm the decision of the board or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(A) In violation of constitutional or statutory provisions;

(B) In excess of the statutory authority of the agency;

(C) Made upon unlawful procedure;

(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(E) Unsupported by evidence which is both substantial and material in light of the entire record.

(3) In determining the substantiality of the evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact. . . .

(4) . . . . An appeal may be taken from the judgment and decree of the chancery court having jurisdiction of these controversies to the court of appeals of Tennessee, in the same manner, but not inconsistent with the provisions of this chapter, as provided in other civil cases.

Therefore, in reviewing TDES's findings of fact, we are constrained to a determination of whether there is substantial and material evidence to support the findings. Substantial and material evidence consists of relevant evidence which a reasonable mind might accept to support a rational conclusion and which furnishes a reasonably sound basis for the action being reviewed. *Southern Ry. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn.1984). If the record contains such evidence, we are limited to a review of the questions of law presented. *See Perryman v. Bible*, 653 S.W.2d 424 (Tenn.App.1983).

To determine whether there exists support for the findings below, we must examine the evidence presented before the appeals referee and later considered by the Board of Review. Mr. Frogge testified that it was "common talk" at MHA that there were irregularities in the hiring of some MHA employees and that his name was on a list of these employees. Mr. Frogge also testified that, although his supervisor had spoken to him about the rumors, the supervisor advised Mr. Frogge to stay with MHA. Although Mr. Frogge presented a report prepared by

2. MHA states the following issues for review:
    1. Did the chancellor err in its judicial review, pursuant to T.C.A. § 50–7–304(1), (2), and (3) by reversing [the] decision of the Department of Employment Security.
    2. Did the chancellor, from the records herein err in its holding that the Appellee, Petitioner below resigned from the Memphis *Housing Authority* for a good cause.
TDES restates the issues as follows:
    I. Whether the Shelby County Chancery Court erred in reversing [TDES's] decision that

William Frogge was disqualified from receiving unemployment compensation benefits because he voluntarily quit without good cause pursuant to T.C.A. § 50–7–303(a)(1).
    A. Whether [TDES's] findings of fact were supported by substantial and material evidence.
    B. Whether TDES correctly found that Mr. Frogge was disqualified from receiving unemployment compensation benefits because he voluntarily quit without good cause within the meaning of T.C.A. § 50–7–303(a)(1).

the Department of Housing and Urban Development which listed him as an employee to be terminated,[3] he testified that he did not receive the report until after he had quit.

Mr. Frogge also presented a sworn statement from Eugene Lucchesi, the Section 8 housing director for MHA. Mr. Lucchesi stated that he had attended a March 1992 HUD conference in Nashville where he learned that certain employees, including himself, were to be terminated and would lose their fringe benefits. Attached to this statement was a page listing employees to be terminated. Notably, although the list contained Mr. Lucchesi's initials, Mr. Frogge was not mentioned. Mr. Lucchesi quit before his scheduled termination date. Mr. Frogge testified that he was in part motivated to quit when he did based upon information received from Mr. Lucchesi.

With respect to his loss of benefits, Mr. Frogge submitted the MHA's operating manual which stated that "[n]o employee who is discharged from the Authority shall be paid for sick leave not taken." Additionally, Mr. Frogge testified that he had received word that those on the list would be denied all fringe benefits. Upon quitting, Mr. Frogge was paid for the accumulated benefits he was trying to protect.

Ms. Lola Powell, who represented MHA at the hearing, confirmed that at the time Mr. Frogge quit, information around the office regarding the impending termination of improperly hired employees was based on rumor. Ms. Powell testified that had Mr. Frogge been terminated, he would not have initially been paid his accumulated benefits. However, she explained that those who were terminated eventually did receive their benefits.

After reviewing the record, we are of the opinion that the findings of fact made by the

Appeals Tribunal and adopted by the Board of Review are supported by substantial and material evidence.

The more difficult issue in this case is whether, under the facts as found by the TDES, Mr. Frogge left the MHA for good cause connected to his employment. An unemployment compensation claimant is disqualified from receiving such benefits where the claimant "left such claimant's most recent work voluntarily without good cause connected with such claimant's work." T.C.A. § 50-7-303(a)(1)[4]. There is no dispute in this case that Mr. Frogge voluntarily left his employment with the MHA. However, the question remains whether he left for good cause when his leaving was based upon his belief that he would soon be terminated and would therefore lose his accumulated overtime and sick pay.

Although no Tennessee court has addressed this precise issue, the eastern section of this court has decided two cases which provide guidance in our resolution of the present case. In *Guess v. Commissioner of Employment Security*, 7 TAM, 41–22 (Tenn. App., E.S., Sept. 8, 1982), the claimant was a "traveler" union member. According to union practice, when a layoff of union members is imminent, the "traveling" members resign their positions in order to protect the jobs of local union members. With a layoff pending, the claimant resigned his job when asked by the business agent of a local union, and filed for unemployment benefits. The court held that, even though the claimant resigned in accord with union practice, he had voluntarily left his job without good cause connected to his work. In *Ruffin v. Bible*, 6 TAM 46–20 (Tenn.App., E.S., Sept. 28, 1981), the claimant quit her job after her employer placed her on probationary status and transferred her to another position. The claimant argued that her demotion to probationary sta-

---

**3.** The report provides the job titles and initials of employees who were recommended for termination. Mr. Frogge's job title and initials appear on the list.

**4.** This section provides two exceptions to this disqualification where the claimant was forced to

leave because of medical reasons, *see e.g.*, *Cooper v. Burson*, 221 Tenn. 621, 429 S.W.2d 424 (1967), or where the claimant left his employment to join the armed forces of the United States.

tus was the first step toward her termination and that she had no choice but to refuse the position. The court stated that, even assuming that claimant was correct in this assertion, she was not justified in accelerating her loss of employment, and rejected this argument as establishing good cause.

The term "good cause" is not defined in T.C.A. § 50–7–303. The following discussion of good cause is found in 81 C.J.S. *Social Security and Public Welfare* § 226 (1977):

In general, "good cause," as used in an unemployment compensation statute, means such a cause as justifies an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed. The terms "good cause" and "personal reasons" connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results; adequate excuses that will bear the test of reason; just grounds for action. The test is one of ordinary common sense and prudence.

In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous or compelling circumstances. . . .

■ Under the facts presented we hold that Mr. Frogge did not have good cause connected to his work to leave his employment with MHA. The TDES's findings support the conclusion Mr. Frogge left his position based upon rumors that he would soon be terminated and that he would lose his compensation benefits. It was not until after he had quit that Mr. Frogge received the report which listed him as an employee to be terminated. Mr. Frogge's voluntary decision to quit was motivated only by speculation that he would lose his job and his accumulated benefits. This is not good cause pursuant to T.C.A. § 50–7–303(a)(1) upon which to leave the ranks of the employed for the ranks of the compensated unemployed.

The judgment of the chancellor is reversed and the decision of the Board of Review is affirmed. Costs of this appeal are taxed against Mr. Frogge, for which execution may issue if necessary.

TOMLIN, P.J., W.S., and HIGHERS, J., concur.