IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

_____

**DORIS J. BRIDGES,**

Appellant,

Vs.

**MARGARET C. CULPEPPER,**
**Commissioner of the Tennessee**
**Department of Employment**
**Security; and**

**INTERNAL REVENUE SERVICE,**

Appellees.

Shelby Chancery No. 107732
C.A. No. 02A01-9704-CH-00074

**FILED**

**September 24, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

FROM THE SHELBY COUNTY CHANCERY COURT
THE HONORABLE NEAL SMALL, CHANCELLOR

Sheila L. Robinson-Beasley of Memphis
For Appellant

John Knox Walkup, Attorney General and Reporter
Kimberly M. Frayn, Assistant Attorney General
For Appellee, Tennessee Department of Employment Security

Veronica F. Coleman, United States Attorney
Joe A. Dycus, Assistant United States Attorney
For Appellee, Internal Revenue Service

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This appeal involves the denial of unemployment compensation benefits. Plaintiff Doris

J. Bridges appeals the decree of the chancery court which dismissed her petition for certiorari

and affirmed the denial of benefits by the Board of Review of the Tennessee Department of

Employment Security.

Doris J. Bridges had been an employee of the Internal Revenue Service in Memphis for over twenty-two years when she accepted an offer of voluntary early retirement. The IRS issued a memorandum in which employees who were at least fifty years old with twenty years of service, or who had at least twenty-five years of service regardless of age, could opt to voluntarily retire if they accepted the offer to do so between May 1, 1995 and September 30, 1995. It is undisputed that without this special program Ms. Bridges would not have been eligible for retirement and that eligible employees received no financial incentive to retire other than the early receipt of their government pensions. Ms. Bridges voluntarily retired under the IRS's Voluntary Early Out Retirement program on May 2, 1995, one day into the eligibility period.

On February 1, 1996 Ms. Bridges filed a claim for unemployment insurance benefits with the Tennessee Department of Employment Security (TDES). Her claim was denied on February 23, 1996 because TDES found that she had voluntarily quit her employment without good cause connected with her work and thus was ineligible for benefits pursuant to T.C.A. § 50-7-303(a)(1) (Supp. 1996). The Appeals Tribunal affirmed this decision on March 29, 1996 and added that there was no "evidence that her retirement was due to an established plan by the employer which because of a lack of work, would have permitted her to accept a separation from employment." Ms. Bridges appealed to the Board of Review on April 1, 1996. On April 29, 1996 the Board of Review adopted the findings of the Appeals Tribunal and affirmed its decision denying unemployment compensation benefits. Ms. Bridges' request for a rehearing by the Board was denied, and her petition for certiorari was subsequently denied by the chancery court.

Ms. Bridges appeals the judgment of the chancery court, and the sole issue for our review is whether the chancellor erred in affirming the Board of Review's denial of unemployment compensation benefits. Appellant argues that even if she could not show good work related cause for leaving her employment, her claim for benefits should be allowed because she qualifies for the "lack of work" and/or the "labor-management contract or agreement" exceptions of T.C.A. § 50-7-303(c)(1).

The standard for judicial review of a TDES Board of Review decision regarding unemployment benefits is set forth in T.C.A. § 50-7-304(i) which provides in pertinent part:

(2) The chancellor may affirm the decision of the board or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(A) In violation of constitutional or statutory provisions;

(B) In excess of the statutory authority of the agency;

(C) Made upon unlawful procedure;

(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(E) Unsupported by evidence which is both substantial and material in the light of the entire record.

(3) In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact.

T.C.A. § 50-7-304(i) (Supp. 1996). This Court must apply the same standard as the trial court in reviewing the trial court's decision in an unemployment compensation case. *Ford v. Traughber,* 813 S.W.2d 141, 144 (Tenn. App. 1991). Therefore, in reviewing TDES's findings of fact, we are constrained to a determination of whether there is substantial and material evidence to support the findings. "Substantial and material evidence is such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Southern Ry. Co. V. State Bd. Of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984) (citations and internal quotations omitted). If the record contains such evidence, we are limited to a review of the questions of law presented. *Perryman v. Bible*, 653 S.W.2d 424, 429 (Tenn. App. 1983).

An individual is disqualified from receiving unemployment compensation benefits where the claimant "left such claimant's most recent work voluntarily without good cause connected with such claimant's work." T.C.A. § 50-7-303(a)(1) (Supp. 1996). The TDES issued its initial

3

decision denying the appellant's claim on February 23, 1996. The agency found that appellant had voluntarily quit her employment without good work related cause and disqualified the appellant for benefits pursuant to T.C.A. § 50-7-303(a)(1). It is undisputed in this case that Ms. Bridges voluntarily left the employment of the IRS to retire early. Although it is unclear from appellant's brief whether Ms. Bridges contests the Board's finding that she left work without good cause, or if she relies instead on her argument that one of the statutory exceptions to this requirement applies to her case, we feel it is prudent to address the good cause issue.

In *Frogge v. Davenport,* 906 S.W.2d 920, 924 (Tenn. App. 1995), we noted that the term "good cause" is not defined in T.C.A. § 50-7-303, but found the following discussion from 81 C.J.S. *Social Security and Public Welfare* § 226 (1977) to be helpful:

> In general, "good cause," as used in an unemployment compensation statute, means such a cause as justifies an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed. The terms "good cause" and "personal reasons" connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results; adequate excuses that will bear the test of reason; just grounds for action. The test is one of ordinary common sense and prudence.
>
> In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous or compelling circumstances.

Utilizing this guidance in interpreting the "good cause" requirement of the statute, this Court has held that an individual's voluntary decision to quit which was motivated only by speculation that he would lose his job and his accumulated benefits was not good cause to leave his employment. *Frogge*, 906 S.W.2d at 924. *See also*, **Hill v. Kelly**, No. 17531(T) C.A. No. 127, 1987 WL 15855 (Tenn. App. W.S. 1987). Similarly, this court feels that without more, Ms. Bridges' alleged fear that she would lose her job and benefits if she did not voluntarily retire is not sufficient to show good cause.

Appellant Bridges argues essentially that even if good cause is not shown she is qualified for benefits pursuant to the "lack of work" exception of the statute which provides:

(c) QUALIFICATIONS. Notwithstanding any other provision of

> law to the contrary: (1) Benefits shall not be denied under this chapter to any otherwise eligible claimant for separation from employment pursuant to a labor-management contract or agreement, or pursuant to an established employer plan, program, policy, layoff or recall which permits the claimant (employee), because of lack of work, to accept a separation from employment.

T.C.A. § 50-7-303(c)(1) (Supp. 1996). Bridges argues that the IRS offered the early out retirement as part of the general downsizing of the government and that this offer was made because there was a lack of work at the IRS. Ms. Bridges claims that she opted to retire early because she was in fear of later being forced out without any retirement benefits. The IRS vigorously denies that there was a lack of work and are quick to point out that Ms. Bridges accepted the offer to retire during the second day of the window of opportunity without discussing the matter with her supervisor. The only evidence in the record of a lack of work at the IRS are statements to that effect by Ms. Bridges and her contention that the IRS would not offer early retirement if there was no lack of work. Ms. Bryant, Labor Relations Specialist for the IRS, testified before the appeals tribunal that there was still work available at the IRS and that even if some positions were eliminated, there would be work for those employees elsewhere within the service. Ms. Bridges admitted that no one at the IRS told her she would lose her job if she did not retire. In addition, Ms. Bridges was classified as "redeployment eligible" and conceded that due to her seniority she "maybe could have stayed longer." We find that there is substantial and material evidence in the record to support the Board of Review's finding that there was no lack of work at the IRS. The Board properly exercised its discretion in accordance with law and did not act arbitrarily or capriciously.

For the first time on appeal, appellant's counsel also argues that the early retirement program was a labor-management contract or agreement and that she should fall within that exception to the good cause requirement. The parties dispute the interpretation of T.C.A. § 50-7-303(c)(1), with the appellant urging that if there is a "labor-management contract or agreement" it is unnecessary for the claimant to also show that there was a lack of work. This Court need not decide this issue of statutory interpretation because we find that there is no evidence that the unilateral offer of voluntary early retirement was any sort of contract or agreement between labor and management. Although we were unable to find any cases on point, this Court presumes that when the drafters added this phrase they contemplated some sort of collective bargaining

5

agreement or bargained for exchange and not a unilateral offer from an employer.

The appellant also contends that the Board of Review and the Chancellor erred in refusing to consider additional evidence that she offered to show that the agency's decision was arbitrary and capricious. Appellant asserts in her brief to this Court that in seeking a rehearing of her case she notified the Board of Review that she was prepared to offer the testimony of three witnesses who allegedly retired under the same early retirement program, but were subsequently allowed to collect unemployment benefits. Appellant argues that under the Administrative Rules and Procedures Act, new evidence is admissible upon judicial review if the court is satisfied that the evidence is material and that there were good reasons for failure to present it in the proceeding before the agency. However, as the appellee TDES correctly points out, the Department of Employment Security is expressly excepted from this provision.

This Court must affirm the chancery court's judgment if we find that the Board of Review did not act arbitrarily or capriciously and there is substantial and material evidence to support its findings. The refusal of the Board to grant a rehearing will not be found to be arbitrary or capricious unless the appellant can "show specifically why [she] was unable to procure the 'newly discovered' evidence and that [she] exercised due diligence in attempting to obtain the evidence prior to" the hearing. ***See Brown v. Weik***, 725 S.W.2d 938, 947 (Tenn. App. 1983). Although the ***Brown*** controversy was in a trial court, we see no reason that this rule should not be equally applicable to an administrative hearing. Ms. Bridges had ample opportunity to discover and present the "new" evidence, but failed to do so until her claim was denied three times. The record also shows that Ms. Bridges arrived at the Appeals Tribunal hearing without important documentary evidence to support her case--not even the IRS memorandum upon which she was basing her entire case. Ms. Bridges did not mention any possible witnesses until after her claim was denied by the Board of Review. This Court does not find that the Board acted arbitrarily or capriciously when it was simply relying on the record before it.

The judgment of the chancery court affirming the Board of Review's decision is affirmed, and the case is remanded for such further proceedings as necessary. Costs of appeal are assessed against the appellant.

_____

W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

CONCUR:

_____
ALAN E. HIGHERS, JUDGE


_____
HOLLY KIRBY LILLARD, JUDGE