# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

_____

**THE OAK RIDGE BOYS, INC.,**

    Plaintiff-Appellant,

                          Sumner Chancery No. 96C-212

Vs.                            C.A. No. 01A01-9708-CH-00401

**STEVE H. SANDERS, ET AL,**

    Defendant-Appellee.

**FILED**

**April 8, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

FROM THE SUMNER COUNTY CHANCERY COURT
THE HONORABLE TOM E. GRAY, JUDGE

John R. Phillips, Jr., Timothy R. Rector
Phillips & Ingrum of Gallatin
For Appellant

John Knox Walkup, Attorney General and Reporter
Ronald W. McNutt, Assistant Attorney General of Nashville
For Appellee

*AFFIRMED*

Opinion filed:

                                 **W. FRANK CRAWFORD,**
                                 **PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

    This is an unemployment compensation case. Plaintiff, The Oak Ridge Boys, Inc.,

appeals the order of the trial court which affirmed the decision of the Board of Review of the

Tennessee Department of Employment Security to award benefits to Steve Sanders.

The claimant, Steve Sanders, was employed as a singer with the Oak Ridge Boys, Inc. from April 1987 to November 1995. For a number of years there had been adverse publicity surrounding a "feud" involving Mr. Sanders, his ex-wife, and his current wife. Newspapers chronicled disputes over Mr. Sanders' failure to pay court ordered child support, his subsequent jail sentence, and "a myriad of other disputes with his ex-wife." Other members of the singing group expressed concern over the negative publicity and its effect on the group. At an October 1995 meeting the group told Mr. Sanders that he had to get control over the increasing publicity problem, and that if it did not stop he would have to be replaced. Another meeting was had on this subject several days later while on a tour bus during a short concert tour. Mr. Sanders claims that at this meeting he "agreed to be fired" to spare the group further embarrassment, but that he would finish the year end concert tour before leaving the group. The group agreed that their discussions "would not leave the bus." However, word of his "resignation" leaked out to members of the road crew while on a tour of Texas. Disturbed by the rumors and the breach of the confidentiality agreement, Mr. Sanders left the group in November 1995 during the middle of the concert tour.

Mr. Sanders's application for unemployment compensation was opposed by the group which asserted that Mr. Sanders was ineligible for unemployment compensation benefits because he quit of his own volition without good cause connected with his work in violation of T.C.A. § 50-7-303(a)(1) and that the act of leaving the group in the middle of a concert tour constituted work related misconduct within the meaning of T.C.A. § 50-7-303(a)(2).

The Tennessee Department of Employment Security (TDES) approved Mr. Sanders's application for benefits finding that he "was discharged from most recent employment when he was forced to leave in lieu of discharge because of circumstances beyond his control," and that "the record fails to establish work-related misconduct under T.C.A. § 50-7-303." This agency decision was upheld by the Appeals Tribunal, the Board of Review, and the trial court.

The Oak Ridge Boys, Inc. has appealed the judgment of the chancery court asserting that Mr. Sanders left his employment voluntarily without good cause. The appellant has apparently

abandoned its alternative argument that Mr. Sanders was discharged for work-related misconduct, and instead simply contends that Mr. Sanders was never discharged. The sole issue for our review is whether the chancellor erred in affirming the Board of Review's award of unemployment compensation benefits.

The standard for judicial review of a TDES Board of Review decision regarding unemployment benefits is set forth in T.C.A. § 50-7-304(i) which provides in pertinent part:

> (2) The chancellor may affirm the decision of the board or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> 　　(A) In violation of constitutional or statutory provisions;
> 　　(B) In excess of the statutory authority of the agency;
> 　　(C) Made upon unlawful procedure;
> 　　(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> 　　(E) Unsupported by evidence which is both substantial and material in the light of the entire record.
> (3) In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact.

T.C.A. § 50-7-304(i) (Supp. 1997). This Court must apply the same standard as the trial court in reviewing the trial court's decision in an unemployment compensation case. *Ford v. Traughber,* 813 S.W.2d 141, 144 (Tenn. App. 1991). Therefore, in reviewing TDES's findings of fact, we are constrained to a determination of whether there is substantial and material evidence to support the findings. "Substantial and material evidence is such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Southern Ry. Co. V. State Bd. Of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984) (citations and internal quotations omitted). If the record contains such evidence, we are limited to a review of the questions of law presented. *Perryman v. Bible*, 653 S.W.2d 424, 429 (Tenn. App. 1983).

An individual is disqualified from receiving unemployment compensation benefits where the claimant "left such claimant's most recent work voluntarily without good cause connected with such claimant's work." T.C.A. § 50-7-303(a)(1) (Supp. 1997). In *Frogge v. Davenport,* 906 S.W.2d 920, 924 (Tenn. App. 1995), we noted that the term "good cause" is not defined in

3

T.C.A. § 50-7-303, but found the following discussion from 81 C.J.S. *Social Security and Public Welfare* § 226 (1977) to be helpful:

> In general, "good cause," as used in an unemployment compensation statute, means such a cause as justifies an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed. The terms "good cause" and "personal reasons" connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results; adequate excuses that will bear the test of reason; just grounds for action. The test is one of ordinary common sense and prudence.
>
> In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous or compelling circumstances.

In the instant case, at the October 22, 1995 meeting, it was agreed by Sanders and the employer that Sanders would work until the end of the year and then his employment would be terminated by the employer. It was further agreed that the terms of the agreement would remain private and confidential. However, on November 4, 1995, while on tour, it was discovered that information leaked about Sanders leaving the group, and at a meeting on that date the employer through its representatives denied the previous agreement. The meeting reached a highly emotional pitch to the extent that Sanders felt unable to perform as an artist. Because of these circumstances, Sanders felt compelled to leave the tour recognizing that he had no ability to control the actions of third parties over which he had no authority.

Upon careful review of the record, we find that there is substantial and material evidence to support the Board of Review's finding that Mr. Sanders "was discharged from his most recent employment and forced to resign because negative publicity about his domestic affairs was adverse to the group's image." We note that this was not the typical employer-employee relationship. The members of the Oak Ridge Boys spent a substantial portion of the year traveling, performing, and living together. To perform night after night in that type of environment requires a special kind of camaraderie. Under the unusual facts of this case, we cannot say that Mr. Sanders voluntarily quit without good cause. The Board properly exercised its discretion in accordance with law and did not act arbitrarily or capriciously.

4

The judgment of the chancery court affirming the Board of Review's decision is affirmed.  Costs of the appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**