IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June, 2000 Session

# WATAUGA INDUSTRIES, INC.  v. HARRY W. GREENWELL, et al

### Appeal from the Chancery Court for Carter County
### No. 23028, 31265 and 21971      G. Richard Johnson, Chancellor

### FILED JULY 19, 2000

### No. E1999-00699-COA-R3-CV

Watauga Industries, Inc. appeals three cases consolidated in the Carter County Chancery Court involving unemployment benefits awarded to certain of its employees.  In the first case ("Greenwell"), the Board of Review of the Department of Labor, Employment Security Commission, found the employees were entitled to unemployment compensation after they were locked out of the plant by Watauga during a labor dispute. The Chancery Court upheld that decision. Watauga appeals the Chancery Court's judgment.  The Chancery Court lacked jurisdiction to hear Watauga's Petition for Certiorari because Watauga did not file its Complaint in Chancery Court within the statutorily mandated 30 days after the decision of the Board of Review became final. Therefore, we vacate the Chancery Court's judgment in Greenwell and dismiss Watauga's Petition. In the remaining two cases ("Anderson"), the Board of Review found the employees refused Watauga's reasonable offers of return to work, and  terminated their unemployment benefits as of the date of that refusal.  The Chancery Court reversed and held that the employees were entitled to continued benefits because Watauga's offer of a return to work was not reasonable.  Watauga appeals the Chancery Court's decision.  We hold that the Chancery Court erred in reversing the Board's decision as the record contains substantial and material evidence supporting the Board's decision, and, therefore, we reverse the decision of the Chancery Court in Anderson.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Vacated in Part, Reversed in Part; and CaseRemanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., joined, and HOUSTON M. GODDARD, P.J.,  filed a concurring opinion.

Michael S. Lattier, Kingsport, for the Appellant, Watauga Industries, Inc.

D. Bruce Shine, Kingsport, for the Appellees, Harry W. Greenwell, et al.

Paul G. Summers and Douglas Earl Dimond, Nashville, for the Appellee, Commissioner of the

Tennessee Department of Labor and Workforce Development.

## OPINION

## Background

During the first week of January 1994, Watauga Industries, Inc. ("Watauga")[1] and its employees' union, the United Textile Worker of America ("Union"), attempted to negotiate a new labor contract to replace the contract that was due to expire on Monday, January 10, 1994. On Saturday, January 8, 1994, the Union voted not to accept Watauga's offered contract. On Sunday, January 9, 1994, Watauga notified its employees that the plant would be closed for one day for maintenance, beginning at 11:00 that evening, through Monday, January 10, 1994, the last day of the expiring contract. Watauga then shut down the plant during that period.

On Monday, January 10, 1994, while the plant was shut down, the Union voted to strike. In a letter to striking employees dated January 12, 1994, Watauga unilaterally implemented the first year of its final proposal and informed the employees that they would be permanently replaced if they did not return to work within two days. The Union and Watauga exchanged correspondence. While some of the employees returned to work, many did not, and Watauga hired permanent replacements for those who did not return. Those workers who did not return to work applied for unemployment compensation benefits from the Department of Employment Security ("the Department").

The union contract specified that a plant closing for economic reasons could not be considered a lockout. Watauga contended that the plant closing on January 9, 1994 was occasioned by economic reasons and therefore was not a lockout. The Department's initial determination was that the closing was a lockout, and the employees were awarded unemployment benefits. Watauga appealed the initial determination to the Appeals Tribunal. At the hearing before the Appeals Tribunal, the President of Watauga testified that he closed the plant for several reasons, including vandalism, the need to replace missing formulas that had disappeared during the vandalism and which were essential for production, and the Union's vote not to accept the new contract. He argued again that the reasons for closing were economic, not a lockout. Various employees testified that damaged equipment at the plant predated the labor dispute and was the result of chronic and routine maintenance problems, not vandalism, and that the plant closing was a lockout. The Appeal Tribunal, in its decision of March 28, 1994, which was adopted and affirmed by the Board of Review on August 23, 1994, found:

> FINDINGS OF FACT: The 116 claimants in this case are members of the United Textile Workers of America, Lee's Dye Workers Local 843 who were last employed at Watauga Industries. The existing contract between the union and the employer was scheduled to expire

---

[1] Watauga states in its appellate brief that the company is no longer in business.

at midnight on Monday, January 10, 1994, and negotiations on a new contract had been taking place since December, 1993. On January 7, 1994, negotiations occurred at which the employer presented its final offer. No consideration was being given to an extension of the existing contract. On January 8, 1994, the union voted to reject that offer. The employer then decided to close the plant for the last day of production that remained under the existing contact [sic]. This action would not have been taken if the union had voted to accept the new contract. The next scheduled shift was to begin at 10:50 p.m. on January 9, 1994. Employees were notified that the plant would be closed on January 10, 1994, including the third shift on January 9, 1994, to avoid further theft of company property and/or vandalism. The employer's attorney also notified the union's international representative that the employer did not consider this to be a lockout. On January 10, 1994, the union voted on the question of whether to accept the employer's proposal, or strike at the expiration of the contract. The vote was to strike. The union's representative informed the employer's general manager of the vote and asked whether the employees should report to work at 10:50 p.m. on January 10, 1994 for the period of time remaining under the existing contract. The general manager informed him that the employees should not report for work for that time. The employer would have resumed operations if the union had accepted the proposal. On January 11, 1994, the employer notified union members that it was implementing the first year of its final proposal, and gave the employees two days from the receipt of the notice to return to work or risk being permanently replaced. The employer began hiring replacement workers after those two days. On January 23, 1994, the union began offering to accept the terms of the employer's final proposal. The employer informed the union that it considered the replacement workers that had been hired to be permanent employees. On January 29, 1994, the union voted to accept the employer's final proposal. The employer agreed to re-call eleven employees and to place the remainder on a preferential re-call list. The union did not accept these terms and picketing has continued.

CONCLUSIONS OF LAW: Under TCA § 50-7-303(a)(4) an individual is disqualified from receiving unemployment compensation benefits "For any week with respect to which the commissioner finds that his total or partial unemployment is due to a labor dispute, other than a lockout which is in active progress at the factory, establishment, or other premises at which he is or was last employed." The Appeals Tribunal finds that on January 9, 1994, the employer shut down its operations and conditioned a resumption of

work on the employee's acceptance of a contract proposal which differed from the existing contract. This is a lockout within the meaning of TCA § 50-7-303(a)(4) and is not disqualifying. The subsequent strike vote does not change the nature of this dispute in view of the fact that the employer continued to condition a return to work on the acceptance of its proposal. While a substantial amount of evidence was received concerning the motivations of the parties with respect to actions that were taken at various points during these events, the Appeals Tribunal does not find the evidence to be sufficiently convincing or persuasive to alter the essential facts set forth above. The agency decisions which approved these claims are affirmed.

On August 24, 1994, Watauga wrote a letter to the local office of the Department, notifying it that "the following individuals were given offers to return to their same jobs, on the indicated dates, and refused those offers." The letter listed 116 employees, the dates they were offered returns to work, and stated that "the benefits paid to those employees should be recovered from them and appropriately credited to Watauga Industries' account."

On August 26, 1994, Watauga filed a Petition to Rehear, alleging that "new and additional evidence has occurred since the March 28, 1994 decision of the Appeals Tribunal in this cause;" i.e., that "unconditional offers of reinstatement of striking employees at Watauga Industries, Inc. have been made by the Company." Watauga listed the names of the employees and the dates each was offered reinstatement, and averred that of the 116 employees who were offered reinstatement, only ten went back to work. Watauga argued that the refusal of the employees to return to work occurred following the March 28, 1994 decision of the Appeals Tribunal, and has "a direct bearing on the eligibility of the claimants in this cause, which could have been neither known nor anticipated by the Appeals Tribunal at the time of its [March 28, 1994] decision." Watauga asked the Board of Review to grant further hearing. The Petition to Re-Hear nowhere mentions the August 23, 1994 decision by the Board of Review.

The Board of Review denied the employer's Petition to Re-Hear on October 11, 1994. The denial stated, in part:

The issues raised by the employer in its petition to rehear are new eligibility issues that were not before the Agency or this board previously in the record of this appeal. To this point, the issue in this appeal has been whether the claimants were unemployed due to a "lockout" as provided in T.C.A. § 50-7-303 (a) (4). The employer now seeks to present evidence that the claimants should be disqualified because of an offer to return to work after the time they filed these claims for employment benefits. We believe this is a sufficiently separate issue that it should be adjudicated separately with its own accompanying appeal rights. Therefore, the employer

-4-

should raise this separate issue with the Agency at a local Agency office for adjudication.

By letter dated January 10, 1994 [sic - 1995], Watauga, by counsel, informed the outgoing and incoming Commissioners of the Department:

> The purpose of this letter is to bring to your attention our very late receipt on <u>January 5, 1995</u>, of two separate decisions made by the Board of Review in the above referenced matter. These decisions by the Board of Review were dated August 23, 1994 and October 11, 1994. [Emphasis in original]

Watauga recited a history of the case and then informed the Commissioners:

> As a result of never having received the Board's decisions prior to January 5, 1995, Employer and its counsel expect the Tennessee Department of Employment Security will treat this date as the date of mailing for both decisions: one being that the claimants should be qualified for benefits due to a "lockout," the second being the Board's denial of the request for rehearing to present evidence that the claimants have been given numerous opportunities to return to work and have refused to do so. Watauga Industries intends to file for judicial review of the Board's decision in accordance with T.C.A. § 50-7-304(i) immediately.

Watauga filed a Petition for Certiorari in the Chancery Court for Carter County on January 20, 1995, asking for review of the decision of the Board of Review. Watauga conceded in that Petition that "this Petition should normally have been filed earlier," but stated that "neither [Watauga] nor their counsel received said decisions," and that "this Petition is therefore timely filed." Watauga filed the Affidavits of Sam Acquaviva, Secretary/Treasurer, and William E. Andersen, counsel for Watauga, stating that they "had received no correspondence whatsoever from the Tennessee Department of Employment Security regarding these two decisions (i.e., the Board of Review's adoption of the Appeals Tribunal's decision and the Board of Review's denial of Watauga's Petition to Re-Hear) prior to January 5, 1995."

The incoming Commissioner of the Department wrote a letter to counsel for Watauga on January 27, 1995 informing him that the Board of Review had advised the Commissioner concerning Watauga's complaints about (1) the Department's failure to consider the issue of offers of reinstatement to the employees, and (2) the charge that counsel for Watauga did not receive the decisions of the Board of Review mailed on August 23, 1994 and October 11, 1994 until January 5, 1995, and asking that the Agency treat January 5, 1995 as the date of mailing of those two decisions for purposes of a petition for judicial review. The Commissioner informed counsel for Watauga:

The Board of Review records indicate that these decisions were timely mailed to you and your client; therefore, if you file for judicial review, they have indicated to me that they will not concede that it is timely. They prefer to have the Court consider all the facts and decide the issue.

On April 13, 1995, Harry Greenwell, et al, (employees) filed an Answer, first asserting that Watauga failed to file its appeal of the decision of the Department in a timely manner as required by T.C.A. § 50-7-304(i)(1). The employees then answered that Watauga had not alleged facts sufficient to demonstrate that the decision of the Board of Review was arbitrary, capricious, or characterized by abuse of discretion, and that the decision of the Board of Review was supported by substantial and material evidence and a reasonable basis in law. Thereafter, several continuances in the case were granted by the Trial Court.

On November 13, 1995, the Commissioner filed its Answer, first asserting that Watauga failed to file its Petition for Writ of Certiorari within the time frame provided by T.C.A. § 50-7-304(i)(1), then further answering Watauga's Petition. On March 25, 1996, the Commissioner filed a Motion to Dismiss the Petition for Writ of Certiorari "on account of the failure of the Petitioner to timely file the appeal as required by T.C.A. § 50-7-304(i)." In its accompanying Memorandum of Law, the Commissioner argued that "[t]he deadlines for seeking administrative and judicial review of the Agency decisions contained in T.C.A. § 50-7-304(b)(1), (c)(1), (h) and (i) are, as a matter of law, jurisdictional in nature and cannot be waived by the Court." The following day, March 26, 1995, the Commissioner filed a Motion asking the Trial Judge to recuse himself, and the employees filed a Trial Brief insisting, in part, that Watauga's Petition for Certiorari could not be maintained in Chancery Court because the time limitations within which to file the Petition were jurisdictional, proof of mailing such notices was sufficient, and proof of receipt was not required. On March 29, 1995, the Department employee responsible for mailing the Department's decisions filed an Affidavit stating that he mailed the Board of Review decisions to Watauga and its counsel on August 23, 1994 and October 11, 1994. On April 3, 1996, Watauga filed a "Reply Brief of Petitioner," denying that Watauga or its counsel received the August 23, 1994 or October 11, 1994 notices from the Department. The following day, Watauga filed a document styled "Brief of Petitioner in Opposition to the Motion of the [Department] to Dismiss the Petition for Writ of Certiorari." On April 29, 1995, the Trial Judge recused himself from the case, and on July 11, 1995, the parties filed an "Agreed Order of Continuance on Motion of the Court." That Order, signed by a new Chancellor, stated:

The Court will review the record and briefs submitted in this matter by the parties and, if the Court determines that a hearing on this matter would be helpful to it in reaching a decision, the Court will order a hearing at that point in time. If, however, the Court determines that a hearing is unnecessary, it will decide this matter on the briefs submitted.

The Chancellor joined this case, "Greenwell", with the two cases, "Anderson", which

-6-

we discuss below and rendered his Memorandum Opinion and Order in all cases on January 8, 1999. As to this case, Greenwell, the Chancellor's Memorandum Opinion and Order did not address the issue of timeliness of Watauga's Petition for Writ of Certiorari. The Chancellor affirmed the decision of the Board of Review that the employees were entitled to benefits and decided the other two cases as discussed below.

The second and third cases, "Anderson", consolidated in this appeal involve the employees' refusal to return to work after the lockout. As instructed by the NLRB, Watauga sent letters to the employees between May 17, 1994 and August 10, 1994, offering to return them to work. It appears from the record that only ten employees returned to work. Watauga then informed the Department that the non-returning employees were no longer entitled to unemployment benefits because of their refusal to return to work. The Department sent questionnaires to the employees about the reasons for their failure to return to work. The employees answered that they did not return to work because they had no union contract and feared violence on the picket line and retaliation. The Department determined that the employees who did not return to work were no longer entitled to unemployment benefits because they had refused an offer of suitable work. The Appeals Tribunal conducted a hearing on April 6, 1995 on the issue of whether the claimants had refused, without good cause, an offer of suitable work, pursuant to T.C.A. § 50-7-303(a)(3). The Appeal Tribunal mailed its decision to the 58 claimants on May 26, 1995, reversing the Department's determination and granting benefits to the claimants. Watauga then appealed the decision of the Appeals Tribunal to the Board of Review, which reversed the Appeals Tribunal and denied benefits to the claimants. The Board of Review held:

> FINDINGS OF FACT: After carefully considering the entire record in this case, the Board of Review finds that the facts found by the Appeals Tribunal accurately summarize the circumstances leading to this claimant's separation from employment. We hereby adopt them for the purposes of this decision. Those findings were: As of May 5, 1994, the employer was instructed by the NLRB in a memo designated as a step toward settling a complaint to offer immediate recall to their former jobs to 22 employees. They were further instructed to make a new offer to the next employee in the seniority eligibility list if the offer was rejected, or there was no response within two weeks. On May 17, 1994, the employer sent twenty-two employees letters. June 1, 1994, twenty more employees were sent letters; June 15, sixteen letters were sent; June 29, thirteen letters were sent; July 13, thirteen letters were sent; July 27, sixteen letters were sent, and August 10, 1994, sixteen letters were sent. Thirteen employees responded and returned to work. The remaining employees received the letters. They did not respond because they understood no contract was signed between the employer and the union. This dispute was hostile and bitter, and there was ongoing litigation and involvement with the NLRB. These specific letters offering a return to former jobs followed two earlier more general

offers, one January 12, 1994, and one February 8, 1994. Claimants understood from those earlier letters they had been replaced by permanent replacement employees and were no longer employed. They also understood in accepting this offer, they would have to cross the picket line and would be working in an ordinary at will status subject to discharge without cause or recourse. They were advised by union officials not to accept the offer.

CONCLUSIONS OF LAW: The Board of Review concludes that the evidence is sufficient to support that the claimants refused an offer of suitable work as contemplated by T.C.A. § 50-7-303(a)(3). The National Labor Relations Board required that the employer make this offer to reinstate the claimants to their former positions. The evidence in the record does not support that the circumstances were so bad that the jobs would be unsuitable.[2]

As stated, the three cases were consolidated in the Chancery Court for Carter County,[3] which then had before it the Board's decision to award unemployment benefits to the employees because of the lockout and the Board's decision thereafter to terminate those benefits of the employees who refused an offer of suitable work. As previously stated, the Chancellor reversed the Board in Anderson and found that the initial award of benefits to the claimants was proper and that Watauga had not offered the employees a return to suitable work.[4]

On August 5, 1999, Watauga appealed to this Court. The Attorney General filed a Notice of Appearance representing the Department in this appeal and shortly thereafter filed an agreed Motion and Memorandum of Law requesting that the entire record of the Department be filed in this appeal.

## Discussion

[2] The Appeals Tribunal's decision had contained the exact same "Findings of Fact" section, but with the opposite result.

[3] One claimant, Wayne F. Arnold, filed his complaint in Washington County Chancery Court on November 25, 1996. The rest of the claimants filed a complaint on that same date in Carter County Chancery Court. The Carter Chancery Court filed an Order consolidating all three cases, i.e., the Arnold appeal of the termination of benefits, the remaining employees' appeal of the termination of benefits, and the employer's appeal of the award of benefits.

[4] The Chancellor's Memorandum was unclear as to disposition, resulting in requests by the parties for a clarification. The Chancellor then issued a revised Memorandum which restated the facts the Court had found but clarified the disposition by ordering that "the Board of Review is affirmed in Civil Action number 21971 (Carter County Chancery Court) and reversed in Civil Action number 23028 (Carter County Chancery Court) and Civil Action number 31265 (Washington County Chancery Court at Johnson City.) The Petitioners shall receive the unemployment benefits to which they are entitled."

The Trial Court had before it three decisions of the Department of Labor's Board of Review. The statutory standard of judicial review of the decisions of the Department's Board of Review provides that the Trial Court can reverse, remand or modify the decision of the Board, if the rights of the Petitioner were prejudiced because the administrative findings, inferences, conclusions or decisions were:

(A)     In violation of constitutional or statutory provisions;

(B)     In excess of the statutory authority of the agency;

(C)     Made upon unlawful procedure;

(D)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(E)     Unsupported by evidence which is both substantial and material in the light of the entire record.

* * *

(3) In determining the substantiality of evidence the chancellor shall take into account whatever in the record fairly detracts form its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact. No decision of the board shall be reversed, remanded or modified by the chancellor unless for errors which affect the merits of the final decision of the board.

(4)  . . . .An appeal may be taken from the judgment and decree of the chancery court having jurisdiction of these controversies to the court of appeals of Tennessee, in the same manner, but not inconsistent with the provisions of this chapter, as provided in other civil cases.

T.C.A. § 50-7-304(i). Of these five grounds, only subsection (E) is at issue. Therefore, in reviewing the Board of Review's decisions, we are limited, as was the Trial Court, to a determination of whether there is substantial and material evidence in the record to support the Board's decision. Substantial and material evidence consists of relevant evidence which a reasonable mind might accept to support a rational conclusion and which furnishes a reasonably sound basis for the action being reviewed. *Frogge v. Davenport,* 906 S.W.2d 920, 922 (Tenn. Ct. App. 1995). If the record contains such evidence, we are limited to a review of the questions of law presented. *Id.*

Watauga appeals the Chancery Court's affirming the Board's decision in Greenwell and its finding "that a lockout existed at the plant when the employees went out on strike." Watauga,

-9-

in Anderson, appeals the Chancery Court's "overturning the Board of Review's decision disqualifying claimants for benefits based on their refusal to accept offers of suitable work."

The Commissioner of the Department of Labor asserts that "this Court lacks jurisdiction to entertain the Greenwell appeal [the first case] because Watauga failed to timely file a petition for certiorari in the Chancery Court seeking judicial review of the Board's decision." The Commissioner then argues that the Board of Review's decisions in both Greenwell and Anderson "should be affirmed because they are supported by substantial and material evidence and have a reasonable basis in the law."

The employees do not address the timeliness issue raised by the Department. They argue that the decisions of the Chancery Court should be affirmed.

We first address the Department of Labor's issue that the Chancery Court had no jurisdiction to hear Watauga's Petition for Certiorari in Greenwell because it was not timely filed as required by T.C.A. § 50-7-304. The employees raised this objection in their Answer to Watauga's Petition in the Trial Court, but not on appeal. The Department raised the objection in their Answer to the Petition and thereafter, both in the Trial Court and this Court. The Trial Court never specifically ruled on the objection to its jurisdiction. If we find this argument to have merit, then Watauga's Petition in the Chancery Court seeking review of the Board's determination that a lockout occurred must be dismissed, and the Board of Review's decision in Greenwell is final. T.C.A. § 50-7-304(h) and (i) provide, as pertinent:

> (h)     APPEAL TO COURTS. Any decision of the board, in the absence of any application by any interested party for rehearing thereof, shall become final ten (10) calendar days after the date of mailing of the written notification of the decision to the last known address of each interested party or within ten (10) calendar days after the date the written notification of the decision is given to each interested party, whichever occurs first.

> (i)     COURT REVIEW: (1) Within thirty (30) days after the decision of the board has become final, any party aggrieved thereby may secure judicial review thereof by filing a petition for judicial review in the chancery court of the county of such party's residence against the commissioner for review of such decision.

Watauga, while conceding that its petition for judicial review was not timely filed as prescribed in T.C.A. § 50-7-304(h), (i), argues that its Petition should be considered as timely filed under Rule 6.02, Tenn. R. Civ. P., since neither Watauga nor their counsel received the decisions of the Board of Review until after the time for filing a Petition for Review in Chancery Court had passed. Rule 6.02 provides:

**Rule 6.02 Enlargement**

When by statute or by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion . . . (2) upon motion made after the expiration of the specified period permit the act to be done, where the failure to act was the result of excusable neglect . . . .Provided, this subsection shall not apply to the time provided in Tennessee Code Annotated Section 27-312 for praying an appeal and filing appeal bond, nor to the time provided in Tennessee Code Annotated Section 27-111 for filing a bill of exceptions.

The Department responds that "the time requirement for filing a petition for certiorari, like the time requirement for filing a notice of appeal to the Court pursuant to T.R.A.P. 4(a), is mandatory and jurisdictional . . . .this rule is absolute and inflexible." We find support for this position in a recent decision of our Supreme Court. In *Schering-Plough Healthcare Products, Inc. v. State Board of Equalization,* 999 S.W.2d 773 (Tenn. 1999), a property owner filed a petition seeking judicial review of the Board's decision upholding a county tax assessment. The Chancery Court of Shelby County dismissed the petition, finding in part that the statute which establishes a 60-day time limit for filing a petition for judicial review of administrative actions, T.C.A. § 4-5-322(b), also requires the petitioner to serve that petition upon respondent within 60 days. The Court of Appeals reversed, holding that the 60-day time limit applies to the filing of the petition but does not require that it be served upon all parties within 60 days. The Supreme Court affirmed the decision of the Court of Appeals. The Supreme Court's reasoning recited familiar rules of statutory construction:

In resolving the issues in this appeal, we are guided by the following general rules of statutory construction. The role of this Court in construing statutes is to ascertain and give effect to legislative intent. Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language. If the legislative intent is expressed in a manner devoid of contradiction and ambiguity, there is no room for interpretation or constructions, and courts are not at liberty to depart from the words of the statute. Where the language contained within the four corners of a statute is plain, clear, and unambiguous, the duty of the courts is simple and obvious, "to say sic lex scripta, and obey it." [Citations omitted.]

*Schering-Plough v. State Bd. of Equalization,* 999 S.W.2d at 775-776. In holding that the Petition for Review in that case could be maintained because it was filed, although not served, within 60 days, the Supreme Court held that the plain language of the statute required only that the petition for review be filed within sixty days after entry of the final agency order, and "where the language

-11-

contained within the four corners of a statute is plain, clear and unambiguous, courts are not at liberty to depart from the language of the statute. Judicial construction simply is not appropriate." *Id.* at 777.

Significantly for our purposes, the Supreme Court also stated in *Schering-Plough* that "we agree with the Court of Appeals that a petition for review is comparable to a notice of appeal." *Id.* at 776. It is axiomatic that a notice of appeal to the Supreme Court or Court of Appeals in civil cases must be filed within the statutory time limit. T.R.A.P. Rule 4(a). This rule is mandatory and jurisdictional. *American Steinwinter Investor Group v. American Steinwinter, Inc.,* 964 S.W.2d 569 (Tenn. Ct. App. 1997). Similarly, a deadline for filing a petition for judicial review in a contested administrative case is mandatory and jurisdictional, and failure to adhere to it is fatal for those seeking review. *Turner v. Tennessee Bd. of Paroles,* 993 S.W.3d 78, 80 (Tenn. Ct. App. 1999); *United Steelworkers of America v. Tennessee Air Pollution Control Bd.,* 3 S.W.3d 468, 472 (Tenn. Ct. App. 1998); *HRA, Inc. v. Tennessee Dep't. of Commerce and Insurance,* 914 S.W.2d 512, 516 (Tenn. Ct. App. 1995). Since a petition for review in the Trial Court is comparable to a notice of appeal in this Court, the mandatory nature and jurisdictional effect of the statutory time limit set forth in T.C.A. § 50-7-304(h), (i), which bears the same plain meaning as the time limit for a notice of appeal, also carries the same effect. This statute clearly says Watauga's petition for judicial review was required to be filed within thirty days after the decision of the Board became final under T.C.A. § 50-7-304(h), ten calendar days after the date of the mailing of written notification of the decision. From the record before us, there is no dispute but that the Board mailed the decisions as required by subsection (h). Accordingly, since Watauga failed to file its Petition for Review in a timely manner, the Trial Court lacked jurisdiction to hear the appeal of the Board of Review's decision in Greenwell that the employees were locked out of Watauga's premises. Therefore, we vacate the Trial Court's decision in Greenwell and dismiss Watauga's Petition for Review in Greenwell.[5]

We next address Watauga's issue that the Trial Court erred in overturning the Board's decision disqualifying the employees for benefits based upon their refusal to accept offers of suitable work. The employees argue that the Trial Court's decision is correct, as they maintain the Board of Review's decision in Anderson was unsupported by the evidence. The Board of Review found that the employees failed to accept a reasonable offer to return to work and each was precluded from receipt of continuing benefits as of his date of refusal of such work. We review the decision of the Board for the presence of substantial and material evidence, i.e., "relevant evidence which a reasonable mind might accept to support a rational conclusion and which furnishes a reasonably sound basis for the action being reviewed." *Frogge* at 922. Neither we nor the Trial Court have the luxury of substituting our judgment regarding the weight of the evidence for that of the Board, even where the evidence could support a different result. *Willamette Industries, Inc. v. Tennessee Assessment Appeals Com'n.,* 11 S.W.3d 142, 147 (Tenn. Ct. App. 1999). In this case, the Board of

---

[5]Although not necessary to our decision, we reviewed the facts as found by the Board of Review in Greenwell and note, as did the Trial Court, that there is substantial and material evidence to support the decision of the Board of Review in Greenwell.

Review adopted the findings of fact of the Appeals Tribunal, but reached the opposite result from those facts. The relevant statute, T.C.A. § 50-7-303(a) provides, as pertinent:

> (a) DISQUALIFYING EVENTS. A claimant shall be disqualified for benefits:
>
> (3) If the administrator finds that the claimant has failed without good cause, either to apply for available, suitable work, when so directed by the employment office, or the administrator, or to accept suitable work when offered (or to return to such claimant's customary self-employment, if any, when so directed by the administrator).
>
> * * *
>
> In determining whether or not any work is suitable for the claimant, the administrator shall consider the degree of risk involved to the claimant's health, safety and morals . . . . Notwithstanding any other provisions of this chapter, no work shall be deemed suitable and benefits shall not be denied hereunder to any otherwise eligible claimant for refusing to accept new work under any of the following conditions:
>
>> (A) If the position offered is vacant due directly to a strike, lockout or other labor dispute;

As stated, the Appeals Tribunal, and the Board of Review, found the following facts about the employees' refusal to accept Watauga's offer of a return to work:

> They did not respond because they understood no contract was signed between the employer and the union. This dispute was hostile and bitter, and there was ongoing litigation and involvement with the NLRB. These specific letters offering a return to former jobs followed two earlier more general offers, one January 12, 1994, and one February 8, 1994. Claimants understood from those earlier letters they had been replaced by permanent replacement employees and were no longer employed. They also understood in accepting this offer, they would have to cross the picket line and would be working in an ordinary at will status subject to discharge without cause or recourse. They were advised by union officials not to accept the offer.

The Appeals Tribunal, based upon its findings of fact, held that the employees' refusal to return to work did not disqualify them from receiving benefits.

-13-

The Board of Review, relying on those same findings of fact, held that the employees' refusal was a disqualifying event. The Board of Review summarized, "[t]he evidence in the record does not support that the circumstances were so bad that the jobs would be unsuitable."

The Trial Court reversed the decision of the Board of Review and reinstated the decision of the Appeals Tribunal, thereby holding the employees' refusal to return to work to be reasonable and not a disqualifying event. The Trial Court, after quoting testimony of the employees, recited the statutory factors, i.e., "the degree of risk involved to the claimants' health and safety," T.C.A. § 50-7-303(a)(4) and that "the position offered was vacant due directly to a strike, lockout or other labor dispute," and concluded:

> There is substantial and material evidence in the record as a whole that requires granting benefits to the petitioners . . . the work was not suitable because the risk of harm to the health and safety of the Petitioners was overwhelming, and the jobs offered to the Petitioners were vacant due directly to a lockout."

In this appeal, Watauga argues:

> The Chancellor substituted his judgment for that of the Board of Review as to the weight of the evidence on questions of fact . . . the Board of Review's determination that Claimants refused an offer of suitable work was based on substantial and material evidence in the record . . . the Chancellor fundamentally misconstrued the Standard of Review applicable to the case on appeal.

We agree. The Trial Court's statement that "there is substantial and material evidence in the record as a whole that requires granting benefits to the petitioners . . ." misconstrues the statutory constraints upon judicial review of the Board's decision. The question before the Trial Court, and this Court, is not whether there was "substantial and material evidence in the record as a whole that requires granting benefits to the petitioners," but rather whether the Board's findings, inferences, conclusions, and decisions were "unsupported by evidence which is both substantial and material in the light of the entire record." The statutorily mandated standard of review, as set forth in T.C.A. § 50-7-304(i)(2) and (3), clearly requires the Trial Court and this Court to affirm the decision of the Board of Review unless that decision is "unsupported by evidence which is both substantial and material in the light of the entire record." If there is substantial and material evidence that supports the Board's decision, it must be upheld:

> In reviewing an administrative decision, a court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." T.C.A. § 4-5-322(h)(5). Factual issues are reviewed upon a standard of substantial and material evidence and not upon a broad, *de novo* review. *CF Indus. v. Tennessee Pub. Serv.*

-14-

> *Comm'n.,* 599 S.W.2d 536, 540 (Tenn. 1980). Substantial and
> material evidence is "such relevant evidence as a reasonable mind
> might accept to support a rational conclusion and such as to furnish
> a reasonably sound basis for the action under consideration." *Sweet
> v. State Tech. Ins. at Memphis,* 617 S.W.2d 158, 161 (Tenn. Ct. App.
> 1989) [*quoting Pace v. Garbage Disposal District of Washington
> County,* 54 Tenn. Ct. App. 263, 390 S.W.2d 461, 463 (1965)].

*Southern Railway Co. v. State Bd. of Equalization,* 682 S.W.2d 196 (Tenn. 1984). We hold the record in this case, Anderson, contains substantial and material evidence to support the findings and decision of the Board. Accordingly, we reverse the decision of the Trial Court and reinstate the Board's decision in Anderson holding that the employees in this consolidated case are disqualified from receiving unemployment benefits after the dates on which each was offered a return to work by Watauga.

### Conclusion

The judgment of the Trial Court in "Greenwell" is vacated and that case is dismissed. The judgment of the Trial Court in "Anderson" is reversed and the Board of Review's decision upheld. This cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed one-half against Watauga Industries, Inc. and one-half against the employees in "Anderson."

_____
D. MICHAEL SWINEY, JUDGE

-15-