**Dr. Richard SWEET, Plaintiff-Appellant,**

**v.**

**STATE TECHNICAL INSTITUTE AT MEMPHIS, et al., Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

March 13, 1981.

Certiorari Denied by Supreme Court June 1, 1981.

Douglas A. McTyier, Memphis, for plaintiff-appellant.

Linda Ross Butts, Nashville, for defendants-appellees.

OPINION

CONNER, Judge.

(Filed with concurrence of participating judges)

Dr. Richard Sweet, plaintiff-appellant,[1] brings this appeal to contest his discharge from employment as project director of Comprehensive Education and Rehabilitation in a Correctional Environment (C.E.R.C.E.). This was a grant program of the Tennessee Department of Corrections for the benefit of state prisoners funded by the Tennessee Law Enforcement Planning Agency and conducted under the auspices of the defendant, State Technical Institute at Memphis (S.T.I.M.). The trial court in upholding plaintiff's discharge determined that there was material evidence to sustain his termination adduced through the various administrative procedures in which plaintiff had sought to test the validity of that termination.

Plaintiff was employed at S.T.I.M. as the project director for Project C.E.R.C.E., which he helped to create, in July of 1976. Project C.E.R.C.E. was composed of two components—one educational, the other, environmental management. Its primary function was the rehabilitation of state inmates housed at the Memphis Correctional Center. The purposes of Project C.E.R.C.E. were to provide an inmate with sufficient training and education to enable him to obtain employment when released and to modify the inmate's social behavior in hopes that the inmate would not be a future offender and could thereafter lead a responsible life in society.

---

1. The parties will be hereafter referred to as in the court below.

Approximately two months after the project became operational and plaintiff was hired as its director, his ultimate superior, Charles O. Whitehead, President of S.T.I.M. notified plaintiff in writing that he had been apprised of numerous incidents of unsatisfactory management in the early stages of the project.[2] Subsequently, in another memorandum from President Whitehead to plaintiff, dated November 19, 1976, the plaintiff was notified that he was being placed on probationary status. This latter memorandum stated that there had been continuing problems experienced with the management of Project C.E.R.C.E. President Whitehead therein emphasized that memos and other written communications had been sent to Dr. Sweet expressing concern in regard to his management practices without any resulting improvement being shown. Thereafter, on March 15, 1977, a substantial portion of plaintiff's management responsibilities and preroga-

tives were taken from him and assigned to Mrs. Liz Lawrence who was given the title of project administrator of Project C.E.R. C.E.

Eight months later, on July 22, 1977, the plaintiff was notified by letter from President Whitehead that his probationary status had been removed.[3] President Whitehead advised Dr. Sweet that he had exhibited a great improvement in managerial skills. His superior also notified Dr. Sweet that he would become responsible for an even greater portion of the decision making and management of the C.E.R.C.E. Project.

Then, on May 2, 1978, the plaintiff was notified of his discharge from his position as project director effective June 30, 1978, by letter from Dr. Whitehead. This termination was based upon the recommendation of Mrs. Lawrence as contained in a memorandum from her to Dr. Whitehead dated April 28, 1978.[4] Subsequently thereto, he invoked

---

2. The September 13, 1976, memorandum from President Whitehead to Dr. Sweet stated:

This memo is to confirm the discussion with you this date. Numerous incidents in the planning, development, and operation of Project CERCE have been brought to my attention which indicate unsatisfactory management of the early stages of this project. Among these are:
1. The hiring, orientation, and treatment of potential unit management personnel.
2. Actions by CERCE which result in a felt exclusion of various Department of Correction's functions, Example: inmate recruiting.
3. The communication of information that involved fiscal affairs to Department of Corrections prior to the approval of STIM administration.
4. The planning and development of processes for the Regional Prison without the approval of STIM or of the Warden.
5. The unwillingness to accept the request and suggestions of the duly appointed liaison from my office to your project.
6. An apparent effort to cause decision making for CERCE to be independent of the administration of both STIM and the Regional Prison.

3. The July 22, 1977, memorandum from President Whitehead to Dr. Sweet stated:

This document is notification that your probationary status is being removed. You have exhibited a great deal of improvement in managerial skills, and I want this to continue. You will become responsible for even a greater por-

tion of decision making/management for the C.E.R.C.E. Project.

4. During the month of February, I was told by a C.E.R.C.E. staff member that Drs. Wood and Harrison had established a private firm on the second floor of the Shelby Oaks Office Building. I have verified this information.

Approximately twelve days ago, I received a brochure from a C.R.E.C. employee concerning a company named Counseling Systems Associates. Under the listing Personnel Vitae, Dr. Sweet's name appears. Under the listing company Vita Grants, the names of the

Correctional Research and Evaluation Center

Victimization Study

Comprehensive Education and
Rehabilitation in a Correctional Environment

is listed. These are grants and contracts awarded directly to S.T.I.M. The bulk of the other listings are projects awarded to the Shelby County Government. On April 27, I had a conference with Dr. Sweet in regard to his support of C.E.R.C.E. and his involvement with Counseling System Associates. Some of the primary points of discussion that I feel would be of interest to you are as follows:
1) The reason that Dr. Sweet did not seek the permission of S.T.I.M. to become a partner in Counseling Systems Associates, was that S.T.I.M. would not have given their permission.
2) That Dr. Sweet did approve the brochure before its distribution.
3) That the listings of S.T.I.M.'s contracts and grants under the company's vita was proper,

his right to appeal his termination because of lack of cause therefore, required if termination should occur after April 15 of a given year.

Had Dr. Sweet been notified by his superiors that he would not be retained for the next school year by April 15, 1978, this action would have been proper simply by such notification of non-renewal of contract, and he would have had no right to contest termination in that manner. However, there was no such notification forthcoming by this date.

An informal hearing was held on Dr. Sweet's appeal before John Leeman, assistant commissioner of the defendant, Tennessee State Board for Vocational Education, on June 14, 1978. Following the hearing, Commissioner Leeman recommended to that Board, which is charged with the ultimate administrative responsibility for determining whether the termination of Dr. Sweet was proper, that the termination of plaintiff's employment as director of Project C.E.R.C.E. be affirmed.

A hearing on the plaintiff's dismissal was held on October 6, 1978, and then continued on October 19, 1978, before William N. Bates, a hearing officer from the secretary of state's office and some members of the Board for Vocational Education. Thereafter, proposed decisions were prepared and submitted on behalf of both parties. Subse-

quently, the hearing officer prepared his proposed decision, and in that document, he recommended that plaintiff be reinstated to his position and awarded all back pay commencing with the date of his termination.

The Board met on May 11, 1979, to finally consider his case administratively. The proposed decision of the hearing officer was rejected, and the proposed decision submitted by the state was adopted in its entirety and the plaintiff's termination was approved.

Pursuant to T.C.A. § 4–5–114,[5] plaintiff filed a petition before the Tennessee Board for Vocational Education to rehear his dismissal. It was denied by the Board on June 8, 1979.

Plaintiff then filed a petition for review in the Davidson County Chancery Court on July 6, 1979. After consideration of the transcript of the administrative proceedings and the exhibits presented along with the briefs and oral arguments of counsel, the Honorable C. Allen High, Chancellor, found that the decision of the State Board for Vocational Education to terminate plaintiff's employment was supported by substantial and material evidence when viewed in light of the entire record. Therefore, plaintiff's termination was affirmed.

Plaintiff brings this appeal pursuant to T.C.A. § 4–5–118.[6] He is seeking an order

as the company's personnel had been involved with these ventures.

4) That he had no intention of disassociating himself from Drs. Wood and Harrison.

5) That he feels that introducing and encouraging C.E.R.C.E. personnel to become involved in this venture, poses no conflicts.

6) That he knew Drs. Wood and Harrison were attempting to place C.R.E.C. with another sponsor, but saw no professional responsibility to S.T.I.M. to advise them of this matter.

7) Indicated that he was only guilty by association.

8) Does not recognize any breach of professionalism or ethics on the parts of Drs. Wood or Harrison, or himself.

I find this lack of responsible professional behavior so offensive for an individual occupying the Project Director's position, that I am urgently recommending Dr. Sweet's termination, effective June 30, 1978. I cannot allow

this individual to undermine the progress and efficiency of such an important undertaking.

5. *Petitions for rehearing.*—(a) Any party to a contested case who deems himself aggrieved by a final order and who desires to have the same modified or set aside may within fifteen (15) days after entry of said order file a written petition for rehearing which shall specify in detail the grounds for the relief sought therein and authorities in support thereof.

6. *Appeals to Court of Appeals.*—An aggrieved party may obtain a review of any final judgment of the chancery court under this chapter by appeal to the Court of Appeals of Tennessee as in chancery cases. The record certified to the chancery court by the agency and the record in the court shall constitute the record in an appeal. Evidence taken in court pursuant to subsection (g) of § 4–5–117 shall become a part of the record upon authentication thereof by the chancellor. No motion for a new trial shall be necessary as a prerequisite to appeal.

reinstating him as project director of Project C.E.R.C.E. and awarding him back pay commencing with the date of his termination.

All of the issues raised by this appeal can be resolved by determining whether the action of the defendant in dismissing plaintiff is supported by evidence which is substantial and material when viewed in light of the entire record. The plaintiff contends that his employment was wrongfully terminated by the state and that the termination was not based upon substantial and material evidence when considering the entire record. We agree.

The factual issues in this case are to be reviewed upon a standard of substantial and material evidence based on a consideration of the entire record, including any portion of the findings which detract from the evidence supporting the findings of the administrative body. T.C.A. § 4–5–117.[7] *See also Humana of Tennessee v. Tennessee Health Facilities Commission,* 551 S.W.2d 664 (Tenn.1977); *Pace v. Garbage Disposal District of Washington County,* 54 Tenn. App. 263, 390 S.W.2d 461 (1965).

■ The Tennessee courts have defined "substantial and material" in the context of T.C.A. § 4–5–117 as "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Pace v. Garbage Disposal District of Washington County,* 390 S.W.2d at 463. In addition, the quantum of evidence must be greater than a "mere scintilla or glimmer." *Ibid.*

The plaintiff was notified on May 2, 1978, that his employment as project director was being terminated. No reasons were given for plaintiff's dismissal in the memorandum. The Commissioner of Education by letter dated June 8, 1978, notified Dr. Sweet that President Whitehead had initiated the termination based upon "ineffective management ability as Project Director of C.E.R.C.E." In a subsequent memorandum, Assistant Commissioner of Education John Leeman elaborated on those charges to Commissioner Ingram.[8] Dr. Sweet was charged with alleged improper management procedures, including spending money outside of contract line items, failure to follow correct personnel hiring policies, and improper involvement with Project C.R.E.C. (Correctional Research Evaluation Component). C.R.E.C. was charged with evaluation of the success of Project C.E.R.C.E. We will examine each of these charges individually.

---

**7.** (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

**8.** The memorandum from Leeman stated:

... After hearing the testimony and cross examination of all parties, I have come to the conclusion and am recommending to you that we uphold the recommendation of Mr. Charles Whitehead and that Dr. Sweet be terminated from employment at Memphis State Technical Institute. The charge of ineffective management was evidenced by testimony which stated that Dr. Sweet continuously failed to follow directions which would result in proper management procedures. Dr. Sweet was involved with project C.R.E.C. after being instructed not to be involved in that project which was in conflict with other activities at State Technical Institute at Memphis. His responsibilities called for expending money with contract line items, however, testimony was given that Dr. Sweet continuously shifted money between line items and spent it outside of line item budget without approval.

Again, it is my opinion that the charges of ineffective management are substantiated against Dr. Sweet and I am recommending to you that he be terminated from employment at the State Technical Institute at Memphis....

From a review of the lengthy record, it was acknowledged by two of the plaintiff's superiors that they did not know of any specific directive that the plaintiff had violated. First, Dr. William E. Saul, director of evening and special programs at S.T.I.M., specifically stated that plaintiff had never violated any direct order that he was given. Then, President Whitehead testified that, to his knowledge, plaintiff had not violated any directives or orders following the period that he had been removed from probation.

There were allegations that the plaintiff was guilty of financial mismanagement with the project budget. This record reveals only one such possible instance. During the *first* year of the project, between $12,000.00 and $13,000.00 worth of textbooks were ordered by the S.T.I.M. Bookstore, and the request was finally approved by plaintiff (though not initiated by him). The budget for textbooks for Project C.E.R.C.E. was $1,200.00 However, all of the books were later rerequisitioned or used by S.T.I.M.

Testimony was given by Dr. Saul, by Mrs. Lawrence, and by Warner Dickerson, then the education administrator for Project C.E.R.C.E., that they did not know of any financial mismanagement in which the plaintiff was involved. Also, President Whitehead testified that he had no direct knowledge of any budgetary mismanagement of the plaintiff after he was removed from probationary status.

Further, at the administrative hearing, testimony was offered in an attempt to show that the plaintiff had violated S.T.I.M. personnel practices in the hiring of three unit managers. The problem had to do with the posting of a multiple listing for the position of unit manager. The uncontroverted proof at the administrative hearing was that the plaintiff contacted Dave Brockman, S.T.I.M. personnel director, for advice as to the correct way to post the positions. Plaintiff was told that it would be inefficient to post each individual's specific job, because there would be continuous vacancies. In any event all testimony regarding possible improper personnel hiring practices predated plaintiff's probation and the subsequent lifting of that probation.

It was also alleged that plaintiff was improperly involved with C.R.E.C. in the evaluation of Project C.E.R.C.E. However, none of the witnesses for the state gave any credible testimony in this regard. Rather, the testimony of Dr. William Saul and Mrs. Lawrence, superiors of Dr. Sweet, on that question was opinion, innuendo and speculative at best. The plaintiff stated that he did not write any part of the C.R.E.C. report that evaluated Project C.E.R.C.E.; however, he pointed out that he did supply the C.R.E.C. staff with the appendix materials that they had requested of him. Dr. Haskell D. Harrison, II, who directed the preparation of the C.R.E.C. evaluation and wrote major portions of it, testified that the plaintiff did nothing on the evaluation other than furnishing the requested data which was not only proper, but necessary.[9] Mrs. Liz Lawrence stated that as far as she knew that Dr. Harrison and his associate, Dr. Robert Wood, wrote the C.E.R.C.E. evaluation and that she never saw the plaintiff writing any part of the evaluation (though she indicated a strong belief that Dr. Sweet was involved in the writing thereof.)

Finally, there was the accusation made by Mrs. Lawrence that the plaintiff had an improper relationship with Counseling Services Associates, a then recently formed private enterprise consulting firm. See footnote 4, *supra*. However, no charge of conflict of interest was made at the various stages of Dr. Sweet's appeal. In fact, Dr. Whitehead specifically testified that conflict of interest was not an issue in the termination process. Rather, the purported concern of S.T.I.M. officials found in this record was that the plaintiff did not get the proper approval for his work with Counsel-

---

9. Dr. Wood also testified at the hearing as a witness for Dr. Sweet but his testimony was lost due to failure of the mechanical recording device. We find no stipulation of counsel or other indication in this record as to the substance of that testimony.

ing Services Associates. Such a requirement for approval of outside consulting work cannot be found in the handbooks provided teachers at S.T.I.M. or elsewhere in the record. To the contrary the *General Policy Manual for Tennessee State Technical Institute* encourages faculty members "to participate in consulting work that will increase their professional effectiveness." The manual specifically states that the extent of such consulting work is to be governed by teaching load and institutional responsibilities. However, there is no mention of a requirement of any type of approval. *General Policy Manual for Tennessee State Technical Institutes*, Chpt. IV, § D(3) (1977). *See also State Technical Institute at Memphis Faculty/Staff Handbook*, § III, p. 18 (1977).

A review of this record reveals substantial professional discord and disagreement in regard to the direction, goals and administration of project C.E.R.C.E. between Mrs. Lawrence and Dr. Sweet. There is ample evidence of professional jealousy and perhaps even severe personality conflicts between the two. However, in spite of their differences both Mrs. Lawrence and Dr. Sweet were managing to co-exist in the project C.E.R.C.E. environment until she found out about Dr. Sweet's new venture with Drs. Harrison and Wood. This was too much in her view as is clearly expressed in her memorandum to President Whitehead of April 28, 1978 (some thirteen days after the April 15 deadline for contract termination as to non-tenured employees). See footnote 4, *supra*.

Mrs. Lawrence believed that Dr. Sweet's conduct in allowing his name to be used as a consultant on a brochure printed by this new consulting firm was improper and the record indicates that when she learned of this relationship she viewed it to be the "last straw" and urged Dr. Sweet's termination. However, based on the evidence in this record and S.T.I.M.'s own stated policies encouraging outside consulting work, we find no wrongdoing by Dr. Sweet in his relationship with Counseling Services Associates and/or its principals, Dr. Harrison and Dr. Wood.

The evidence of the state as to managerial deficiencies by Dr. Sweet *before* being put on probation was marginal at best. The evidence of specific deficiencies sufficient to justify termination after his removal from probation and after many of his managerial duties had been assigned to Ms. Lawrence is non-existent in this record.

In order to allow reasonable time to seek other work, as a matter of legitimate policy the state is required to give written notice to a non-tenured teacher, who is not to be retained for the coming year, of the non-renewal of the contract no later than April 15 of the current school year. *Rules of Tennessee Department of Education State Board of Education—Teacher Regulations § 0520-2-2-10*. The plaintiff did not receive notice of his dismissal until May 2, 1978, more then two weeks after the non-renewal deadline. If on or before April 15, 1978, the plaintiff's superiors had thought his work fell below acceptable levels, such notice of non-retention would surely have been given.

The defendants submit that the plaintiff can be dismissed for cause past the April 15 deadline. *Johnson v. City of Jackson*, 42 Tenn.App. 296, 302 S.W.2d 355 (1956) is cited as authority for that proposition. In *Johnson, supra* a former teacher brought suit to recover her salary for the coming academic year, because she had been improperly discharged past April 15. On at least two occasions prior to April 15, she had been admonished by the school principal and the city schools' superintendent about punishing students too severely. The city officials considered terminating or not re-electing the complainant. However, they decided to put her on probation with the understanding that if the practice continued she would be dismissed. The complainant received the letter notifying her of her re-election on April 14. Subsequently, another incident took place where the complainant had told one student to strike another. The complainant was then notified of the termination of her employment. She claimed that she could not be dismissed

after April 15. The court of appeals affirmed the complainant's dismissal.

The *Johnson* case is readily distinguishable from the case at bar. The chief reason for the complainant's termination in *Johnson* arose *after* April 15. Further, she was allegedly on probation when she was re-elected to her position. In the case at bar, the plaintiff was in good standing with S.T.I.M. on April 15. The record is completely devoid of any actions by the plaintiff which would justify his termination after April 15, and more significantly, there is no evidence in the record of any misconduct which would justify the plaintiff's termination *after* he was removed from probationary status. What the record does reveal, as set forth in her memorandum to Dr. Whitehead of April 28, 1978, is that Mrs. Lawrence became aware of the existence of the brochure of Counseling Systems Associates wherein Dr. Sweet was listed as a consultant one day after the April 15 deadline. See footnote 4, *supra*.

Since plaintiff's termination was not received by him until two weeks after the April 15, 1978 deadline and there is no evidence in the record of deficiencies by plaintiff after that date (or after being removed from probation) which would justify his termination, we hold that the plaintiff's termination was not proper.

Had the state chosen to relieve the plaintiff of his duties when he was first placed on probation or prior thereto if and when specific shortcomings became apparent, there may have been sufficient basis therefor under the "substantial and material" rule. However, once the probation was lifted, absent some material and credible evidence of plaintiff's new wrongs, the state has failed to carry its burden of proving "ineffective management" justifying termination.

Accordingly, we reverse the holding of the trial court and remand the case to that court to determine the amount of pay and allowances due Dr. Sweet and to afford

such other relief to which he may be entitled. Costs are taxed to the defendant.

REVERSED AND REMANDED.

TODD, P. J., and LEWIS, J., concur.