# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 1, 2010 Session

## SHERRY A. RIDLEY v. JAMES G. NEELEY, ET AL.

### Appeal from the Chancery Court for Hamilton County
No. 08-0849      W. Frank Brown, III, Chancellor

---

### No. E2010-00289-COA-R3-CV - FILED OCTOBER 28, 2010

---

After being discharged from her employment with Federal Express Corporation ("the Employer"), Sherry A. Ridley filed a claim for unemployment compensation. The Tennessee Department of Labor and Workforce Development ("the Department") initially approved her claim, and its ruling was affirmed by the Appeals Tribunal. Following an evidentiary hearing, the Appeals Tribunal reversed, concluding that Ridley was disqualified from receiving unemployment benefits because she was discharged for work-related misconduct. The Board of Review affirmed the denial of benefits. Ridley filed a petition for judicial review. The trial court affirmed the Board's decision. Ridley appeals to this Court and essentially contends that there is no evidence that she committed work-related misconduct. We conclude that there is substantial and material evidence to support the decision that Ridley is disqualified from receiving unemployment compensation benefits because of work-related misconduct. Accordingly, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Joe Timberlake, Signal Mountain, Tennessee, for the appellant, Sherry A. Ridley.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Lindsey O. Appiah, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Labor and Workforce Development.

Colby S. Morgan, Memphis, Tennessee, for the appellee, Federal Express Corporation.

## OPINION

### I.

Ridley worked as a courier for the Employer for some fourteen years. On April 10, 2008, she was terminated for falsifying company documents. On April 18, 2008, she filed a claim for unemployment benefits. In response to the Department's request for information,[1] the Employer responded only that she was "discharged for unacceptable and improper conduct." Ridley's claim for benefits was initially approved based on the Department's finding that the evidence submitted by the Employer was not sufficient to prove that she was discharged for misconduct related to her work.

The Employer sought review by the Department's Appeals Tribunal. The Employer did not participate in the scheduled telephone hearing, and the Department's ruling was initially affirmed. Subsequently, the Employer was granted a new hearing on August 5, 2008, at which hearing Ridley and the Employer both appeared and presented evidence.

Scott Sealor, Ridley's former supervisor, testified on behalf of the Employer regarding the circumstances that lead to Ridley's discharge. On Monday, April 7, 2008, a customer called the Employer to advise that its packages had not been picked up on the previous Friday as scheduled. In its ensuing investigation, the Employer determined that Ridley had scanned a different customer's package as if it were the package of the complaining customer but had actually missed that customer's stop. In looking further at Ridley's pick-up manifest, the Employer discovered it reflected that Ridley had made seven stops in seven minutes on April 4 within a 10-12 mile radius, a physical impossibility. Sealor noted that according to the manifest, some of the packages were picked up during the same, brief time span from customers with different zip codes. Sealor testified to his conversation with Ridley when he first confronted her with the apparent discrepancies on her pick-up records:

> [W]hen I first talked to her I asked her . . . why the pick up . . .
> had been missed . . . and she stated that she did not pick up
> there, that she overlooked the stop and used the wrong . . .
> number and it caused her to think that she had [received] that
> package, . . . so she failed to go to that stop, then later I asked

---

[1] *See* Tenn. Code Ann. § 50-7-304(b)(2)(C) (providing that "[i]f a separation issue exists, the separating employer will be asked to supply information describing circumstances leading to the separation").

her, . . . how she could have done seven stops in seven minutes, basically. . . .

Two days later, Ridley wrote a statement explaining her actions:

> Picked up several stops while I was still in break mode. Trying to get the numbers for this route to improve. I have been told nearly everyday how important the numbers are. This is the first time to do such, need to see how to make my route numbers. After being confronted with situation, was told would be suspended.

Sealor further related as follows with respect to his conversation with Ridley:

> Counsel for Employer: Now in discussing this with [Ridley], what did she tell you about scanning and taking a break?

> Sealor: She told me verbally that she had picked up all these stops while she was in break and she sat in a parking lot and scanned them all, . . . each number is different, she was still at the same location, she just scanned them all together.

> Counsel: At the conclusion of all this, . . . was the decision made to terminate her?

> Sealor: It got sent to upper management and human resources and they looked over everything and decided it was deliberate falsification, that [Ridley] admitted it and that she was aware of the policy and the repercussions, if you violated the policy, was terminated the next day.

Sealor explained the importance of accuracy in the electronic tracking system, *i.e.*, the Employer offered a money-back guarantee to its customers that it could inform a customer of the location of any package within 30 minutes or shipping was free. In addition to its business reputation and the money-back guarantee, Sealor noted that tracking records were also used to measure an employee's productivity. For these reasons, the Employer's policy mandated accurate record keeping. It allows "zero tolerance" for violations.

At the conclusion of the hearing, the Appeals Tribunal found that Ridley was disqualified from receiving unemployment compensation and reversed the Department's approval of Ridley's claim. In its August 6, 2008, decision, the Appeals Tribunal stated:

> FINDINGS OF FACT: The claimant's most recent employment prior to filing this claim was with Federal Express Corporation from October 25, 1993 until April 9, 2008 as a courier. On April 7, 2008, a customer complained that the claimant failed to pickup a package from their place of business. On April 9, 2008, the operations manager investigated this matter by checking the claimant's documentation of her pickups. According to the documentation, the claimant made 7 pickups within a 10 to 12 mile radius in 7 minutes. The claimant could not have made that many stops in that period of time. The claimant also twice documented the same pickup.
>
> The operations manager confronted the claimant later that day concerning her documentation of her pickups. The claimant submitted a handwritten statement to him that indicated she picked up several stops while on break mode. On April 10, 2008, the operations manager discharged claimant for violation of the employer's acceptable conduct policy. On February 25, 2005, the claimant acknowledged she had read and understood the seriousness and consequences of violations of the employer's acceptable conduct policy. The policy notified the claimant that deliberate falsification of company documents including but not limited to business reports, delivery records, timecards, benefits eligibility forms, expense reports, and employment applications would result in discharge.
>
> The employer considers falsifications of delivery records a serious violation because they guarantee to tell customers where their package is located within 30 minutes of an inquiry or the customer receives free shipping. The claimant's conduct inflated her productivity but she denied that her conduct was deliberate. The employer is subject to Department of Transportation policy violations if employees are found to be working while on break.

CONCLUSIONS OF LAW: The Appeals Tribunal finds that claimant is not eligible for unemployment benefits. The issue is whether the claimant is guilty of work-related misconduct under TCA 50-7-303(a)(2). Misconduct is an intentional act or a violation of policy that materially breaches the standard of behavior an employer has a right to expect. The evidence establishes that the claimant was discharged for violation of company policy. The Appeals Tribunal finds the evidence is sufficient to establish misconduct as defined in the statute because the claimant's conduct materially breached the standards of behavior the employer had a right to expect.

The claimant's negligence may have resulted in her documenting that she made a pickup twice. However, her documentation of 7 pickups in 7 minutes while she was on break was substantial and shows an intentional disregard of the employer's interest. She was made aware that such conduct would result in discharge. Therefore, the evidence amounts to work-related misconduct as provided under the statute.

In affirming the denial of benefits,[2] the Board of Review found, in relevant part:

The claimant performed work during her break time (a violation of policy) but was discharged because she did not accurately record the times the items were actually picked up by scanning them at the time of the pick-up. She apparently made several pick-ups and later went to a parking lot at which time she scanned and entered them into her computer. The paperwork did not reflect an accurate pick-up time for those items. The employer testified that it insists on accurate scan times for item pick-ups. The claimant was aware that her conduct was contrary to policy. Misconduct has been reasonably shown.

---

[2]The Board affirmed in part and remanded in part the decision of the Appeals Tribunal. As noted, the Board affirmed the decision denying unemployment benefits to Claimant. It remanded for consideration of the question of "whether the employer should be charged with any benefits [initially] paid [to Ridley] in accordance with TCA § 50-7-304(b)(2)(D) . . ." based on the Employer's failure to respond to the Department's request for separation information by "describing circumstances leading to the [claimant's] separation" as required by statute. The Board ultimately resolved this issue in Ridley's favor by ruling that any benefits paid to Ridley were properly charged to the Employer. This issue is not a subject of this appeal.

Ridley filed a petition for judicial review in the trial court. The court affirmed the decision of the Board.

The instant appeal to this Court followed.

## II.

Ridley presents one issue for our review:

> Whether there is substantial and material evidence to support the decision of the Board of Review disqualifying Ridley from receiving unemployment compensation benefits as a result of work-related misconduct.

## III.

Appellate courts and trial courts are subject to the same standard of review when reviewing administrative decisions pertaining to unemployment compensation. *Armstrong v. Neel*, 725 S.W.2d 953, 955 n.1 (Tenn. Ct. App. 1986). That standard, codified at Tenn. Code Ann. 50-7-304(i)(2)-(3) (Supp. 2009), provides as follows:

> (2) The chancellor may affirm the decision of the board or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (A) In violation of constitutional or statutory provisions;
>
> (B) In excess of the statutory authority of the agency;
>
> (C) Made upon unlawful procedure;
>
> (D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (E) Unsupported by evidence which is both substantial and material in the light of the entire record. In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that

-6-

of the board of review as to the weight of the evidence on questions of fact. No decision of the board shall be reversed, remanded or modified by the chancellor unless for errors which affect the merits of the final decision of the board. Such petition for judicial review shall be heard by the chancellor either at term time or vacation as a matter of right, any other statute of this state to the contrary notwithstanding.

Substantial and material evidence consists of "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Sweet v. State Tech. Institute at Memphis*, 617 S.W.2d 158, 161 (Tenn. Ct. App. 1981) (quoting *Pace v. Garbage Disposal District of Washington County*, 54 Tenn. App. 263, 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965)). Therefore, if the record contains such evidence, we are limited to examining the issues of law posited by the plaintiff. *See Perryman v. Bible*, 653 S.W.2d 424, 429 (Tenn. Ct. App. 1983). On our review, we accord no presumption of correctness to the Department's conclusions of law. *Wallace v. Sullivan*, 561 S.W.2d 452, 453 (Tenn. 1978); *Stanford v. Comm'r of the Dep't of Labor & Workforce*, No. W2004-02373-COA-R3-CV, 2005 WL 1833734 at *3 (Tenn. Ct. App. W.S. filed Aug. 2, 2005) (citing *Sutton v. Traughber*, No. 88-309-II, 1989 WL 48782, at *2 (Tenn. Ct. App. filed May 12, 1989)). Further, we are mindful that "unemployment compensation statutes should be construed liberally in favor of the employee and . . . an employer has the burden of proving the employee's disqualification from unemployment benefits." *Stanford*, 2005 WL 1833734 at *5-6 (citing *Sutton*, at *2); *Armstrong v. Neel*, 725 S.W.2d at 955 n.2 (Tenn. Ct. App. 1986).

IV.

Ridley challenges the Board's decision that she was disqualified from receiving unemployment benefits as a result of work-related misconduct. Basically, she contends that her actions did not amount to misconduct and therefore there is nothing to support the denial of her claim. The evidence persuades us otherwise.

A claimant is disqualified from receiving benefits "[i]f the administrator finds that a claimant has been discharged from the claimant's most recent work for misconduct connected with the claimant's work, . . . ." Tenn. Code Ann. §50-7-303(a)(2). In the present case, the Board found that Ridley's discharge for falsification of company documents constituted such misconduct and therefore rendered her ineligible for benefits. As a reviewing court, we are mindful that we must affirm the administrative denials of claims for unemployment compensation if the record contains substantial and material evidence to support a finding that an employee has engaged in misconduct related to his or her work.

-7-

First, we agree that the findings of the administrative bodies below, as affirmed by the trial court, are supported by substantial and material evidence. The evidence showed that in 2005, the Employer amended its acceptable conduct policy to include falsification of company documents as a "discharge offense." A memorandum the Employer sent to all employees reflected the change and emphasized the importance of maintaining accurate documents to the Employer's business and its reputation, among other considerations. It is undisputed that Ridley was aware of the policy that provided for an employee's termination upon the occurrence of "even one" violation. Furthermore, Ridley does not dispute that while on her route on April 4, 2008, she failed to scan several packages when she picked them up, instead scanning them all at roughly the same time during a later stop. As a result, the tracking documents for the packages in question did not reflect accurate pick up times. We agree with the Board's finding that Ridley thereby falsified company documents in violation of the Employer's express policy prohibiting such conduct. We next consider whether Ridley's conduct is properly deemed "misconduct" related to her work for purposes of her claim for unemployment compensation.

At the time Ridley was discharged, Tenn. Code Ann. § 50-7-303(a)(2)[3] did not define the types of misconduct that warrant a denial of unemployment compensation. The courts were left to make this determination on a case-by-case basis. *See*, *i.e.*, ***Grandstaff v. Hayes***, No. 01-A-01-9206-CH-00253, 1993 WL 46509, at *2, Tenn Ct. App. M.S., filed Feb. 24, 1993). "At a minimum, however, . . . there must be shown a material breach of some duty which the employee owes to the employer." ***Cherry v. Suburban Mfg. Co.***, 745 S.W.2d 273, 275 (Tenn. 1988)(citing, generally, ***Weaver v. Wallace***, 565 S.W.2d 867, 870 (Tenn. 1978)).

On February 11, 2005, Employer issued a memorandum to its Southern Region employees addressing the "critical importance" of the "change addressing falsification-related violations" to its "Acceptable Conduct Policy." The memo stated:

> [C]onduct involving deliberate falsification of Company documents is now listed as a "Discharge Offense" along with firearm/dangerous-weapons and drug/alcohol violations.
>
> The policy specifies:
>
> Discharge Offense:

---

[3]Effective January 1, 2010, the statute was amended to include a definition of "misconduct." *See* Tenn. Code Ann. § 50-7-303(b)(3)(A).

An employee is dismissed upon completion of an investigation confirming violations related to

Deliberate falsification of Company documents including but not limited to business reports, delivery records, time cards, benefits eligibility forms, expense reports and employment applications.

This policy reflects the seriousness of falsification and its legal, financial, public relations, and operational impact on the Company. Even <u>one</u> failure to maintain our reputation for integrity can jeopardize our relationship with customers and other groups whose business and goodwill is essential to our continued success.

Do not jeopardize your career or the Company's reputation by engaging in falsification of any kind. In accordance with the above-quoted policy, which specifies discharge/dismissal for falsification-related violations, there is and will be zero tolerance for this type of behavior.

It is critical that you understand the consequences of conduct involving falsification of Company documents.

I have read this carefully and understand the seriousness and consequences if I violate this policy.

(Underlining in original).

As reflected by her signature, Ridley received the memo on February 25, 2005; she does not argue that she did not understand its contents. Neither, as we have noted, does Ridley contest that she created inaccurate records for those packages that she admittedly failed to enter into the company's tracking system at the time she received them for shipping. She simply asserts that "there was no evidence that [her] failure to scan at the time of pick up was fraudulent or arose out of 'wrongful intent' or 'evil design' " and therefore, she reasons, it is not properly deemed misconduct for purposes of her benefits claim. As the trial court put it, Ridley's argument "appears to be that she had no bad motive, i.e. no intent to harm [the Employer]," and there was "nothing in it" for her either.

At the hearing, Ridley essentially contended that she "had no intention of deliberately falsifying anything," or to cause damage to anyone, and offered various other possible reasons for her discharge – her recent wreck of a company vehicle, her age, the physical effects of the wreck, and making her supervisor "look bad."

The hearing officer questioned Ridley further as follows:

> Hearing officer: [B]ut looking at this report, why . . . is it documented that way, if you didn't do anything intentionally, what did you do . . . .
>
> Ridley: When I had the wreck?
>
> Hearing officer: No, we're talking about why you were discharged mam. All these stops.
>
> Ridley: They said I was discharged because I falsified
>
> Hearing officer: Right, so you're saying
>
> Ridley: It said deliberately falsifying and I did not deliberately falsify
>
> Hearing officer: I heard that mam, but how did [you] make all these stops according to your tracking. How did you make all these stops
>
> Ridley: These stops, . . . . I couldn't get in, get out, I had to walk a distance to get to them.
>
> \* \* \*
>
> I was running a route for another fellow and I overlooked one of his stops that they had assigned to me. I did wait til I got, [. . .] there was a lot of 18 wheelers in the way so I was trying to get out of their way and I was trying to just get somewhere where I could stop safety and not get hit. Before I scanned these packages, I was not trying to deliberately, I was just trying to get them into the system. I was not deliberately trying to falsify anything.

We have defined "misconduct," for purposes of disqualification of benefits under Section 50-7-303(a)(2) as

> conduct evincing such wilful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertence or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

*Armstrong v. Neel*, 725 S.W.2d at 956 (Tenn. Ct. App. 1986) (citing *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (Wis. 1941)). As can be seen, conduct manifesting a "wrongful intent or evil design" may certainly constitute misconduct that disqualifies an employee from unemployment benefits. "Misconduct," however, is not limited to acting with such "bad" motives. An employee's "intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer," despite his or her good intentions, may also constitute disqualifying misconduct.

In its December 29, 2009, memorandum opinion and order, the court denied Ridley's petition and upheld the denial of her claim for benefits, in relevant part, as follows:

> [Ridley] has not met her burden of proof to reverse the Board's decision[ ] to deny unemployment compensation benefits to [her]. She failed to scan the packages when received. Instead, she scanned the packages close in time. The scanned time was not the time the package was picked up. Ms. Ridley falsified the pickup time for 7 to 11 packages. She committed an intentional act by scanning the packages one after the other one [and this] was not a mistake. She did an act that was prohibited by company policy. She was supposed to scan the packages when picked up, not later as a part of a mass scanning. She violated a duty she owed to [the Employer]. There is material and

-11-

substantial evidence to support the decision of the Appeals
Tribunal and the Board.  There are no errors of law.

On our review, we conclude that there is substantial and material evidence to establish that Ridley was disqualified from receiving unemployment compensation benefits as a result of misconduct related to her work.

V.

The judgment of the trial court is affirmed. This case is remanded to the trial court, pursuant to applicable law, for the collection of costs assessed below. Costs on appeal are taxed to the appellant, Sherry A. Ridley.

_____
CHARLES D. SUSANO, JR., JUDGE