IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 18, 2013 Session

# KENNER D. ENSEY v. KARLA DAVIS, COMMISSIONER OF THE TENNESSEE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT ET AL.

**Appeal from the Chancery Court for Coffee County**
**No. 2011CV120     Vanessa Jackson, Judge**

**No. M2011-02761-COA-R3-CV - April 10, 2013**

Appellant appeals the trial court's decision upholding the decision of the designee of the Commissioner of the Tennessee Department of Labor and Workforce Development, which denied appellant unemployment benefits. We reverse, finding that, while appellant did quit his job voluntarily, he had good cause for doing so.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., and RICHARD H. DINKINS, JJ., joined.

Kathryn A. Evans and Salmun Kazerounian, Tullahoma, Tennessee, for the appellant, Kenner Ensey.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; and Derek C. Jumper, Assistant Attorney General, for the appellee, Tennessee Department of Labor and Workforce Development.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Kenner Ensey was employed as a driver and warehouse worker for Smith & Son Wholesale Company, Inc. ("Smith & Son") from May 22, 2009 until October 28, 2010. Mr. Ensey applied for unemployment compensation benefits on November 18, 2010. The Tennessee Department of Labor and Workforce Development ("the Department") denied Mr. Ensey's initial claim for unemployment benefits by letter mailed December 1, 2010, finding

that Mr. Ensey voluntarily left his most recent work, that he quit due to alleged verbal abuse from his supervisor, and that he did not speak with anyone about the alleged verbal abuse before he walked out. The Department concluded that, "although [Mr. Ensey's] reason for leaving met [his] personal needs, the reason is not considered good work-related cause to quit under Tennessee Code Annotated 50-7-303."

Mr. Ensey pro se appealed to the Appeals Tribunal. On January 24, 2011, the Appeals Tribunal held a telephone hearing in which Mr. Ensey and Smith & Son (represented by its President, Mr. Monty Smith) testified.[1] Mr. Ensey noted that he received a raise and that his supervisor told him, "you're doing fine" a few weeks before his last day of work. When asked whether he quit his job or was discharged, Mr. Ensey explained that he "walked out" after an incident involving his supervisor and another driver, Zack.[2] Mr. Ensey testified that, around lunchtime, the supervisor summoned both men while they were inside the warehouse and began "cursing and screaming" at Mr. Ensey for "not doing his job." The supervisor told Mr. Ensey that Zack was doing all the work in the warehouse and that "he was sick and tired of holding [Mr. Ensey's] hand all along." To this, Mr. Ensey responded, "I don't have to stand here and take this kind of abuse," and proceeded to walk out of the warehouse. The supervisor followed Mr. Ensey, "still yelling and cussing" and "us[ing] the term M-F." On his way out, Mr. Ensey noticed that Clyde Smith, Smith & Son's owner, had been within earshot of this altercation, yet neither did nor said anything in response to it.[3] Mr. Ensey clocked out, went home, and, for the rest of the afternoon, sat by the telephone awaiting an apology from his employer. He did not receive one. The next morning, Friday, October 29, 2010, Mr. Ensey returned to the warehouse and spoke with Monty Smith, who had not witnessed the previous day's incident. Mr. Smith told Mr. Ensey that he had provoked the incident.

The Appeals Tribunal reversed the Department's initial decision, finding:

In October 2010, [Mr. Ensey's] supervisor became dissatisfied with [his] job performance and began yelling at and using profanity toward [Mr. Ensey] in the presence of a coworker. [Mr. Ensey] was offended by the supervisor's statements and walked toward the office. The supervisor followed [continuing to yell and curse at Mr. Ensey and doing so in the owner's presence.] The

---

[1] During this telephone hearing, the parties were given opportunities to ask each other questions. Mr. Smith did not question Mr. Ensey or otherwise dispute his testimony.

[2] This incident took place on Thursday, October 28, 2010.

[3] Clyde Smith passed away on November 14, 2010.

owner did nothing. [Mr. Ensey] left the jobsite.

The Appeals Tribunal concluded that "the evidence establishes that [Mr. Ensey] voluntarily quit his employment and good cause, within the meaning of TCA § 50-7-303(a)(1), has been reasonably established. [Mr. Ensey's] supervisor made offensive statements to [him], yelled at [him], and used profanity toward [him] in the presence of a co-worker and the owner."

Smith & Son appealed to the Commissioner's Designee. By letter dated February 22, 2011, the Commissioner's Designee reversed the Appeals Tribunal's decision, finding *inter alia* that "[Mr. Ensey] was very upset, clocked out for lunch and did not return to finish his shift. There was no indication that the supervisor had cursed at him before or notified him of problems with his performance." The Commissioner's Designee concluded that Mr. Ensey did not establish a work-related reason for resigning because he did not prove that Smith & Son "either did something or failed to do anything and [Smith & Son's] actions are what actually caused hi[m] to resign." The Commissioner's Designee further concluded that Mr. Ensey "was required to prove that he exhausted all reasonable alternatives prior to resigning" and that "the supervisor's outburst and language used on this one occasion did not constitute good cause for [Mr. Ensey] to leave his employment."

On March 3, 2011, the Commissioner's Designee denied Mr. Ensey's petition to rehear, concluding that it merely presented repetitive argument, that Mr. Ensey walked off his job and failed to return until the following Tuesday, and that "by that time his employment had been terminated because he walked off the job. Such job abandonment is considered voluntarily leaving the job."

In April 2011, Mr. Ensey, now represented by counsel, filed a petition for review in the chancery court. After a hearing and by order entered November 28, 2011, the chancery court affirmed, finding that:

> The Designee found that conduct of Mr. Ensey's supervisor, while inappropriate, was an isolated incident and did not amount to good cause for Mr. Ensey to leave his employment. The Designee concluded that Mr. Ensey voluntarily left his job without good cause connected with his work. After considering the entire record in the matter, the Court finds that the decision of the Commissioner's Designee is supported by evidence that a reasonable mind might accept to support the Designee's findings of fact and conclusions of law. The Court further finds that notice given by the [Department] to Mr. Ensey of his right to representation by an attorney at the Appeals Tribunal hearing was sufficient.

Mr. Ensey appealed to this Court.

STANDARD OF REVIEW

In unemployment compensation cases, appellate courts and trial courts apply the same standard of review. *DePriest v. Puett*, 669 S.W.2d 669, 673 (Tenn. Ct. App. 1984). The court may reverse, remand, or modify the administrative decision if it is:

(A) In violation of constitutional or statutory provisions;

(B) In excess of the statutory authority of the agency;

(C) Made upon unlawful procedure;

(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(E) Unsupported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 50-7-304(i)(2). For purposes of subsection (E), substantial and material evidence is "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Sweet v. State Technical Inst. at Memphis*, 617 S.W.2d 158, 161 (Tenn. Ct. App. 1981) (quoting *Pace v. Garbage Disposal Dist. of Washington Cnty.*, 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965)). Courts generally interpret the requirement of substantial and material evidence as requiring "'something less than a preponderance of the evidence, but more than a scintilla or glimmer.'" *Dickson v. City of Memphis Civil Serv. Comm'n*, 194 S.W.3d 457, 464 (Tenn. Ct. App. 2005) (quoting *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)).

ANALYSIS

The first issue we must address is whether Mr. Ensey quit or was terminated. The Department's initial decision and the decision of the Appeals Tribunal found that he quit voluntarily. The Commissioner's Designee implicitly assumed he quit voluntarily and the Designee's denial of the petition to rehear stated that Mr. Ensey's "job abandonment is considered voluntarily leaving the job." The evidence shows Mr. Ensey "walked off" the job at lunchtime and did not return that day. He testified that the came in the next morning and "talked to Monty about it." He did not testify that he reported to work. Indeed, Mr. Smith

-4-

testified that Mr. Ensey was "a no-call, no-show on 10/29/2010."[4]  We find that there is substantial and material evidence showing that Mr. Ensey voluntarily quit his job.

The second issue is whether Mr. Ensey had good cause to leave his job voluntarily. A claimant cannot receive benefits if "the claimant has left the claimant's most recent work voluntarily without good cause connected with the claimant's work." Tenn. Code Ann. § 50-7-303(a)(1)(A).  In *Frogge v. Davenport*, 906 S.W.2d 920 (Tenn. Ct. App. 1995), this court stated:

> In general, "good cause," as used in an unemployment compensation statute, means such a cause as justifies an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed. The terms "good cause" and "personal reasons" connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results; adequate excuses that will bear the test of reason; just grounds for action. The test is one of ordinary common sense and prudence.

> In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous or compelling circumstances . . . .

*Id*. at 924 (quoting 81 C.J.S. *Social Security and Public Welfare* § 226 (1977)).  Whether the facts establish good cause is a question of law.  *Cooper v. Burson*, 429 S.W.2d 424, 427 (Tenn. 1968).

While his testimony was somewhat lacking in detail, Mr. Ensey testified that his supervisor cursed and screamed at him in front of a coworker and the owner, Clyde Smith, who just ignored it and walked away.  The only testimony from the employer about the incident itself was as follows:

---

[4]Oddly, the "claimant statement" of Mr. Ensey in the administrative record states that "I walked out and then came back on Tuesday and talk [sic] to the V.P.  He advised me that I did not have a job."  It further states that "Monte [sic] Smith the VP, advised me I no longer had a job because I had walked out and they did not hear from me until 4 days later."  This seems to contradict a return the day after the incident to discuss the matter.

Mr. Blaylock[5]: Okay.  Now, you heard Mr. Ensey's testimony.  He said his supervisor was yelling at him and cussing him in front of co-workers.  Do you know if that's true?

Mr. Smith: No, I don't.

Mr. Blaylock: He also said that the same supervisor was yelling at him - and cussing him in front of the owner.  Do you know if that's true?

Mr. Smith: No, I don't.

Mr. Blaylock: He also said that the owner heard the yelling and cussing and did nothing.  Do you know if that's true?

Mr. Smith: No, I don't.

Mr. Blaylock: Anything else?

Mr. Smith: No, sir.

Mr. Smith declined to offer any other comment or to ask Mr. Ensey any questions.  The employer did not call Mr. Ensey's supervisor as a witness or request a continuance to do so.  The Commissioner's Designee noted that "[i]t appears that the Employer has had a reasonable opportunity to present all relevant proof."

The employer presented absolutely no proof about the incident.  The Commissioner's Designee rested the decision to deny benefits upon the following:

> There was no proof that the supervisor had repeatedly verbally abused the Claimant, and it seems to be an isolated incident.  While no one would dispute that an employee should not be mistreated, we can conclude that the supervisor's outburst and language used on this one occasion did not constitute good cause for Claimant to leave his employment.

The trial court agreed with the Designee's determination.  The Designee's view appears to be that one isolated incident cannot as a matter of law constitute good cause for voluntarily quitting a job.  We must respectfully disagree.  Mr. Ensey testified to an explosive event in which his supervisor used very offensive language,[6] screamed[7] at Mr. Ensey in front of other

---

[5]Nick Blaylock of the Tennessee Department of Labor and Workforce Development was the Appeals Hearing Officer.

[6]We do not know exactly what the supervisor said, but Mr. Ensey did testify that the term "M-F" was used.

[7]Mr. Ensey also testified that the supervisor's "screaming and hollering got louder," indicating not

(continued...)

employees and followed Mr. Ensey to the front of the warehouse "screaming and hollering" all the way. Mr. Ensey testified to a workplace event that was offensive, embarrassing and potentially violent. Furthermore, it was an event condoned by the inaction of the owner, who witnessed it and did nothing. We also note that the Designee's assumption that this was an isolated event is unwarranted based on the circumstances of the hearing. While Mr. Ensey never testified about whether other events had happened, Mr. Blaylock controlled the hearing by asking both sides repeated, pointed questions and never asked about other such events. Because his focus was on the event itself, the question "Is there anything else, Mr. Ensey?" could not have been viewed by Mr. Ensey as an invitation to discuss other incidents.[8]

Given the entirety of the circumstances to which Mr. Ensey testified and the fact that his testimony about the incident is totally unrebutted, we find that good cause existed for Mr. Ensey to voluntarily quit. We, therefore, reverse the trial court ruling upholding the decision of the Commissioner's Designee.

Costs of appeal are assessed against the appellee, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[7](...continued)
a quick "yell and it's over" incident, but an incident that continued and escalated over a period of time.

[8]It appears that Mr. Ensey could have testified as to other outbursts by the supervisor, given his comments in his letters appealing the Designee's ruling.