IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 1, 2021

## JASON KOVATCH v. COMMISSIONER OF LABOR AND WORKFORCE DEVELOPMENT ET AL.

**Appeal from the Chancery Court for Blount County**
**No. 2019-CH-74     Telford E. Forgety, Jr., Chancellor**

———————————————————

**No. E2020-01744-COA-R3-CV**

———————————————————

This appeal involves a denial of unemployment compensation benefits. Specifically, a former employee contends that there existed good cause as to why he resigned from his employment such that he should be entitled to unemployment compensation benefits. The Commissioner's Designee found that no good cause existed as to why the employee terminated his employment and therefore determined that he was not entitled to benefits. The employee then filed a petition for judicial review. The trial court thereafter affirmed the Commissioner's Designee's decision. On appeal, we conclude that there is substantial and material evidence in the record to support the Commissioner's Designee's decision, and therefore, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded.**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and JOHN W. MCCLARTY, JJ., joined.

Jason Kovatch, Maryville, Tennessee, *Pro se*.

Herbert H. Slatery, III, Attorney General and Reporter, and Lexie Ward, Assistant Attorney General, for the appellee, Tennessee Department of Labor & Workforce Development.

William J. Carver, Knoxville, Tennessee, for the appellee, Denso Manufacturing Tennessee, Inc.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

Jason Kovatch ("Employee") was employed as a production team member by Denso Manufacturing Tennessee, Inc. ("Employer") from November 5, 2018 until June 28, 2019. Employee submitted three separate letters of resignation to Employer on the following dates: June 18, June 19, and June 21, 2019. Employee stated in his letters that his last day would be either July 14, 2019 or July 9, 2019[1] and listed numerous reasons for his resignation in these letters, including his contention that Employer failed to follow its own policies, his dissatisfaction concerning his bonus and time off, and also issues surrounding an alleged work-related injury. Regarding his alleged work-related injury, Employee claims that he reported an injury to his direct supervisor in February of 2019, who then sent him home. Employee further claims that, at some point thereafter, he filed a worker's compensation claim with the State of Tennessee. According to Employer, it had no record of a workplace injury until July 12, 2019, after Employee was no longer employed by the company, when it received a "First Report of Work Injury or Illness" form.

Employer accepted Employee's resignation effective on June 28, 2019. Employee thereafter requested unemployment compensation benefits from the State. On August 1, 2019, the Tennessee Department of Labor and Workforce Development ("Department") denied Employee's request, finding that he was ineligible for unemployment benefits as he "voluntarily quit" his most recent employment and that his stated reason for leaving Employer did not constitute good cause under Tennessee Code Annotated section 50-7-303(a)(1) or 50-7-303(a)(2).[2] On August 2, 2019, Employee requested an appeal of the Department's denial. Thereafter, the Appeals Tribunal mailed Employee a notice informing him of the date and time of a telephonic hearing concerning his appeal. Included in this notice, among other information, were detailed hearing procedures that Employee was to follow concerning the submission of exhibits and evidence. Based on the record, it appears that the only exhibit entered into evidence by Employee was his own letter of resignation dated June 19, 2019. On August 19, 2019, the Appeals Tribunal affirmed the Department's decision, concluding that Employee was "disqualified from receiving unemployment compensation benefits" as the evidence established that Employee had "voluntarily quit" his job with Employer and that there was no evidence indicating any "good cause" for his resignation that would permit the receipt of benefits. On August 21,

---

[1] Employee gave varying dates as to his last day in his three letters of resignation. Specifically, in at least one of his letters, Employee stated that "[m]y last day of employment will be one day before the scheduled return to work date. So that I WILL be paid for the July 4th [h]oliday also to be paid for July 5th mandatory 8-hour vacation day. And to be able to use all benefits as an employee up to the day of returning to work as scheduled. To be no later than 7/14/19."

[2] These provisions provide for disqualifying events that will preclude a claimant from receiving benefits, which will be discussed in more detail *infra*.

2019, Employee appealed the decision of the Appeals Tribunal to the Commissioner's Designee. The Commissioner's Designee affirmed the Appeals Tribunal's decision on September 4, 2019, concluding that its findings were proper based on the available evidence and the applicable law.

On October 15, 2019, Employee filed a Petition for Judicial Review in the Chancery Court of Blount County, Tennessee. Employee's petition alleged in relevant part that the previous denials of his unemployment benefits were not supported by substantial evidence in the record. The Department and Employer were listed as "Respondents" to this petition. On March 22, 2021, the trial court entered an order on Employee's petition, concluding that there was "substantial and material evidence in the record to support" the findings of the Commissioner's Designee. This appeal followed.

## DISCUSSION

At the outset, we note that Employee represented himself in the proceedings below and is now representing himself before this Court. "*Pro se* litigants are entitled to fair and equal treatment." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000) (citing *Childs v. Duckworth*, 705 F.2d 915, 922 (7th Cir. 1983)). However, *pro se* litigants are not permitted to "shift the burden of litigating their case to the courts." *Id.* (citing *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C. Cir. 1983)). As such, *pro se* litigants must comply with the "same substantive and procedural requirements" as represented parties. *Id.* (citing *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988)). However, courts give *pro se* litigants "a certain amount of leeway in drafting their pleadings and briefs." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing *Whitaker*, 32 S.W.3d at 227; *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 397 (Tenn. Ct. App. 1997)).

Here, having carefully reviewed Employee's brief, we observe numerous deficiencies concerning Rule 27 of the Tennessee Rules of Appellate Procedure.[3] First, we note that Employee includes numerous statements of fact that contain no support nor citation to the appellate record. Moreover, we observe that Employee fails to include a section containing "[a] statement of the issues presented for review," but instead outlines what we perceive to be his issues on appeal in his denominated "Summary of the Argument" section. At other places, and irrespective of the above concerns, it is not clear what Employee is attempting to argue in connection with certain offered arguments.

---

[3] Specifically, Rule 27(a) of the Tennessee Rules of Appellate Procedure requires, among other things, that an appellant's brief contain "[a] statement of the issues presented for review" and an argument that contains "citations to the authorities and **appropriate references to the record**." Tenn. R. App. P. 27(a) (emphasis added).

Given these deficiencies that exist in Employee's brief and the lack of clarity that accompanies some of the included arguments, Employee has complicated our task in providing appropriate appellate review. Nevertheless, despite these deficiencies—and in the interest of justice—we will attempt to address the merits of Employee's appeal, as best as we can understand his raised grievances.[4]

In reviewing Employee's unemployment benefits claim, this Court applies the same standards as those used by the trial court. *Armstrong v. Neel*, 725 S.W.2d 953, 955 n.1 (Tenn. Ct. App. 1996); *see also Metro. Gov't of Nashville & Davidson Cty. v. Schacklett*, 554 S.W.2d 601, 604 (Tenn. 1977). There is no presumption of correctness afforded to the lower courts in reviewing these matters. *Armstrong*, 725 S.W.2d at 955 n.1 (citing *Wallace v. Sullivan*, 561 S.W.2d 452, 453 (Tenn. 1978)).

Pursuant to Tennessee Code Annotated section 50-7-304(i)(2), the Commissioner's Designee's decision may be reversed, remanded, or modified where such decision is:

(A) In violation of constitutional or statutory provisions;
(B) In excess of the statutory authority of the agency;
(C) Made upon unlawful procedure;
(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(E) Unsupported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 50-7-304(i)(2). Although substantial evidence is not statutorily defined, it generally "requires something less than a preponderance of the evidence, but more than a scintilla or glimmer." *Wayne Cty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988) (citing *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966); *Pace v. Garbage Disposal Dist.*, 390 S.W.2d 461, 462 (Tenn. Ct. App. 1965)). This Court, like the trial court, is not to substitute its judgment for that of the Commissioner's Designee "as to the weight of the evidence on questions of fact." *See* Tenn. Code Ann. § 50-7-304(i)(3); *Metro. Gov't of Nashville & Davidson Cty.*, 554 S.W.2d at 604 (noting that appellate courts employ the same standard of review as trial courts when reviewing these administrative matters). The decision of the Commissioner's Designee shall not be reversed, remanded, or modified "unless for errors that affect the merits" of the designee's final decision. Tenn. Code Ann. § 50-7-304(i)(3). The decision must be upheld "if there exists 'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under

---

[4] As we will discuss *infra*, the primary focus of our analysis will be centered on whether there exists substantial and material evidence in the record to support the Commissioner's Designee's decision. However, in the course of our discussion, we will also attempt to address other issues we perceive Employee to be raising.

- 4 -

consideration.'" *Wayne Cty.*, 756 S.W.2d at 279-80 (Tenn. Ct. App. 1988) (quoting *Southern Ry. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984); *Sweet v. State Technical Inst.*, 617 S.W.2d 158, 161 (Tenn. Ct. App. 1981)).

Although, as we alluded to earlier, Employee's brief appears to raise several points of contention, we conclude that the matter now before us primarily concerns whether there exists substantial and material evidence in the record to support the Commissioner's Designee's determination that Employee is not entitled to unemployment compensation benefits. Specifically, the dispositive question is whether Employee terminated his employment with "good cause."

An individual will be disqualified from receiving unemployment compensation benefits if it is determined that the individual left his most recent work "voluntarily without good cause connected with the [individual's] work." Tenn. Code Ann. § 50-7-303(a)(1)(A)(i). Although "good cause" is not defined in section 50-7-303, this Court has previously accepted that it

> means such a cause as justifies an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed. The terms "good cause" and "personal reasons" connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlated results; adequate excuses that will bear the test of reason; just grounds for action. The test is one of ordinary common sense and prudence.

*Frogge v. Davenport*, 906 S.W.2d 920, 924 (Tenn. Ct. App. 1995) (quoting 81 C.J.S. *Social Security and Public Welfare* § 226 (1977)). Moreover, "the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous or compelling circumstances[.]" *Id.* (quoting 81 C.J.S. *Social Security and Public Welfare* § 226 (1977)).

Here, the record shows that Employee submitted three separate letters of resignation to Employer, informing Employer that his last day of work would be either July 9th or 14th. Ultimately, Employer accepted Employee's resignation effective June 28th. When Employee later unsuccessfully attempted to obtain unemployment benefits through the Department, the Department found he voluntarily terminated his employment without "good cause." To the contrary, Employee asserts that he was terminated by Employer on June 28th and, even if he did voluntarily resign, said resignation was based on "good cause"

such as to permit eligibility for unemployment benefits.[5]

In support of his contention that he had "good cause" to terminate his employment, Employee's brief references a "breach in the hiring agreement," "unlawful workplace injury actions after [Employer] failed to follow policies and laws regarding workplace injuries, reporting injuries, paid time off, medical bills," and an issue concerning the amount of his bonus. In rendering the disposition, the Commissioner's Designee found that:

> [Employee] resigned his position because he was dissatisfied with the working conditions. The Employer does have a policy of periodic bonuses. The bonuses are based on overall company performance and the bonus that [Employee] received was around $50. He was expecting a larger bonus and was disappointed.
>
> The Employer also has a plan whereby employees may submit plans for performance improvement plans. The ideas are first submitted to Human Resources where an initial decision is made if the idea is "tangible." If it is deemed tangible then it is submitted to a committee for study and, if accepted, can lead to a monetary bonus for the person who submitted the idea. The study can take some time to evaluate. [Employee] had submitted a couple of suggestions under the plan but had not heard back from them and was upset with the amount of time involved.
>
> In February of 2019, [Employee] felt that he had been injured at work. He submitted a claim that it was a work related injury but was initially deemed not work related. [Employee] has, and is still in a dispute with the Employer. Unhappy that it was not deemed a work related injury and treated as such, resigned.
>
> . . . .

---

[5] We find Employee's contention that Employer's acceptance of his resignation effective June 28th constitutes a termination to be without merit. "Courts will find that an employee has voluntarily terminated employment if the employee fails to take all necessary and reasonable steps to protect his or her employment." *McPherson v. Stokes*, 954 S.W.2d 749, 751 (Tenn. Ct. App. 1997) (citing *Freeman v. District of Columbia Dep't of Emp. Servs.*, 568 A.2d 1091, 1093 (D.C. 1990); *In re Claim of Bonilla*, 650 N.Y.S.2d 360, 361 (1996); *Zielinski v. Unemployment Compensation Bd. of Review*, 101 A.2d 419, 420 (1953)). Based on the contents of Employee's various letters of resignation, we conclude that Employee failed "to take all necessary and reasonable steps" in protecting his employment. Specifically, we note that Employee indicated in his letters of resignation that he would not physically return to work, but was essentially delaying his final day of work in order to obtain the maximum amount of benefits from Employer. As such, we do not find Employer's subsequent acceptance of his resignation to equate to a termination.

> While [Employee] may have been disappointed with the Employer about those situations, the fact that he disagreed with or was upset with the actions of the Employer is not sufficient to show that he had good cause connected to work to leave [his] most recent employment.

We conclude that the Commissioner's Designee's findings are supported by the record. In support of this, we point to the singular exhibit entered into evidence by Employee during his hearing with the Appeals Tribunal,[6] which is one of Employee's three letters of resignation.[7] In this letter, Employee states his reason for terminating his employment as due to issues concerning Employer's purported violations of its policies regarding bonuses, time off, work related injury reporting, medical leave, and short-term disability. There is nothing contained in Employee's letter of resignation entered into evidence that supports a finding that there existed "good cause" for Employee to terminate his employment, as Employee does not expand outside of his very brief listings of his reasoning. In the hearing before the Appeals Tribunal, the hearing officer questioned Employee as to the reasons listed in his letter of resignation. However, similar to his letter of resignation, we do not find Employee's explanations sufficient to warrant a finding of "good cause" for terminating his employment. Specifically, nothing in Employee's letter of resignation, nor in his statements before the Appeals Tribunal, indicates that his reasons for leaving would "reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed." *Frogge*, 906 S.W.2d at 924 (quoting 81 C.J.S. *Social Security and Public Welfare* § 226 (1977)). Again, "there must be *some* compulsion produced by extraneous and necessitous or compelling circumstances" which leads an employee to voluntarily terminate his employment. *Id.* (emphasis added). A closer look at Employee's provided reasons for his resignation reveal that no such circumstances exist. First, we note that Employee takes issue with his bonus, contending that, according to his own calculations, it should have been larger. He also takes issue with Employer's program wherein an employee may submit an idea and, after a somewhat lengthy review process by

---

[6] In rendering his decision, the Commissioner's Designee noted that he had reviewed the record in the case, including any exhibits previously entered into evidence. As such, the record on appeal consists of the record before the Appeals Tribunal.

[7] In his brief, one of Employee's issues centers on the fact that the hearing officer in the Appeals Tribunal failed to "enter material evidence into the record." We find this contention to be without merit. A review of the record reveals that upon his appeal to the Appeals Tribunal, Employee was informed of the proper procedures and rules for submitting evidence. Specifically, this information was included in the "Notice of Telephone Hearing Unemployment Insurance Claim Appeal" document that was mailed to Employee on August 7, 2019. Moreover, at the hearing before the Appeals Tribunal, the hearing officer again informed Employee of the requirements concerning the introduction of exhibits into evidence and stated that if documents are not offered by Employee into the record "they will not be part of the record on appeal." Employee entered only *one* exhibit into evidence pursuant to these procedures, which was one of his three letters of resignation. Our review of this matter "is limited to the administrative record except to the extent that Tenn. Code Ann. § 4-5-322(e) and -322(g) permit the introduction of additional evidence." *Jones v. Greene*, 946 S.W.2d 817, 822 (Tenn. Ct. App. 1996).

Employer, be compensated for said idea if it is accepted and implemented. Specifically, Employee maintains that he submitted an idea and never heard back. However, we do not find Employee's disappointment with his bonus and with Employer's timeliness concerning its idea incentive program sufficient to constitute "extraneous and necessitous or compelling circumstances" which ultimately compelled Employee to voluntarily terminate his employment. We find similarly as to the issue concerning Employee's purported work-related injury that occurred in February of 2019. When brought up in the hearing before the Appeals Tribunal, Employer stated that it had no such record of an injury and that there was no worker's compensation claim filed with the company. Indeed, according to the record, it was not until July 12, 2019 that Employee submitted a "First Report of Work Injury or Illness" form to Employer. Therefore, it appears that Employer was not properly notified of any injury until *after* the Employee was no longer working for Employer. We find no support for Employee's contention that Employer violated its policies concerning work-related injuries when it had not been informed of such injury.

Upon our review of the record, we conclude that indeed there existed substantial and material evidence which supported a finding that Employee voluntarily terminated his employment with Employer without "good cause" and was, therefore, disqualified from receiving unemployment compensation benefits.

### CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed, and the case is remanded for further proceedings as may be necessary and are consistent with this Opinion.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE